**Edna FORBES, Appellant,**

v.

**WILSON COUNTY EMERGENCY DISTRICT 911 BOARD and W.J. McCluskey, Appellee.**

Supreme Court of Tennessee, at Nashville.

April 13, 1998.

Margaret L. Behm, Anne C. Martin, Dodson, Parker & Behm, Nashville, for Appellant.

W. Gary Blackburn, Blackburn, Slobey, Freeman & Happell, Nashville, for Appellee.

### OPINION

HOLDER, Justice.

The plaintiff, Edna Forbes, was employed by the Wilson County Emergency Communication District 911 Board ("911 Board"). She was hired in May of 1991 as the Board's first 911 supervisor. In November of 1992, Ms. Forbes began experiencing physical problems. Her symptoms included bleeding, back pain, difficulty in walking and fatigue. On March 22, 1993, she was diagnosed as having colon cancer and scheduled for hospitalization and treatment that was to begin on March 24, 1993.

Ms. Forbes spent the days prior to her hospitalization at her office preparing for an anticipated six to eight week absence. She prepared schedules for the operators in advance and drafted notices to employees delegating responsibilities. She contacted W.J. McClusky, Chairman of the 911 Board, and informed him that she was being admitted to the hospital for emergency surgical procedures on March 24, 1993. She explained to Mr. McClusky that she had been diagnosed with colon cancer and that she might be unable to work for a period of six to eight weeks.

Testimony indicates that Mr. McClusky became irate. He raised his voice at Ms. Forbes and informed her that she was "getting ready to get [her]self in trouble" for being out of the office. Ms. Forbes became emotional during the conversation with Mr.

McClusky. She notified the other board members of her situation in writing.

Ms. Forbes underwent surgery and had a portion of her colon removed on March 26, 1993. She remained in the hospital for several days and finished her recovery at home. Her doctors released her to return to work on May 11, 1993. She provided the county attorney, Michael Jennings, with doctors' notes regarding her medical release.

Approximately one week prior to the regularly scheduled May 10, 1993, 911 Board meeting, the board members conducted a secret meeting concerning Ms. Forbes. Mr. McClusky presented a "list of concerns" regarding Ms. Forbes at this closed meeting. The 911 board members in attendance at the closed meeting did not contact Ms. Forbes to review any of Mr. McClusky's concerns with her.

On May 10, 1993, the 911 Board held its scheduled public meeting. During the May 10 meeting, the 911 Board voted to demote Ms. Forbes to a part-time operator position with no benefits. The vote and subsequent demotion occurred without any discussion concerning Ms. Forbes' performance or Mr. McClusky's "list of concerns." Ms. Forbes was notified of the Board's decision by certified letter and was never contacted to work at the 911 office in any capacity.

A jury found that the defendant, 911 Board, had violated both the Open Meetings Act and the handicap discrimination statute.[1] The jury awarded Ms. Forbes $ 69,975 in back pay, $ 38,675 in front pay, $ 250,000 in damages for embarrassment and humiliation and $ 50,000 in punitive damages. The trial court further awarded Ms. Forbes $ 50,000 in attorney's fees and $ 6,455 in litigation expenses. The court denied the defendants' oral motions for new trial or remittitur.

The Court of Appeals affirmed the judgment as to the Open Meetings Act but reversed the trial court's judgment on the issue of handicap discrimination. The court found that the Board's demotion of Ms. Forbes was void due to the Board's violation of the Open

---

1. The jury found "that Mrs. Forbes' colon cancer was the sole reason for the 911 Board's decision to demote her to part-time operator instead of full-time operator."

Meetings Act. The court, however, found that because the demotion was void, the "plaintiff ha[d] not been discriminated against ..." and reinstated her to her supervisory position. Judge Lillard, in a concurring and dissenting opinion, noted that while the Board's decision was void, the plaintiff's damages were "certainly real." Accordingly, Judge Lillard would not have employed a legal fiction to deny Ms. Forbes her remedies under the handicap discrimination law.[2]

## ANALYSIS

The plaintiff argues that the appellate court erred in finding that "[s]ince the board's action is void, plaintiff has not been demoted and is reinstated to her position as supervisor. Because there was no demotion, plaintiff has not been discriminated against ..." The issue is, therefore, whether the Board's discriminatory action which is later determined to be void under the Open Meetings Act can still serve as the basis for discrimination. We hold that it can.

While the Board's actions were void, both the demotion and its consequences were "certainly real" for Ms. Forbes. The concept argued by the defendants and advanced by the appellate court's majority is pernicious. Under the "void and of no effect" rule, a decision to discriminate made in violation of the Open Meetings Law is treated as an absolute nullity or as though the decision had never been made. This, however, is contrary to reality in the case now before us. The Board made a discriminatory decision, and the plaintiff suffered real consequences. For the law to refuse to recognize these facts and accord them any significance whatsoever is for the law to blind itself to a moment of historical reality.

■ We find that under the facts of this case no purpose is served by treating the defendants' actions as though they never occurred. An actor who discriminates should not be able to circumvent liability for discrimination merely by violating another law or statute. We hold that a discriminatory decision made in violation of the Open Meet-

ings Act can serve as the basis for a discrimination suit even though the decision is later declared void for violating the Open Meetings Act.

■ Our next inquiry is whether colon cancer can constitute a handicap. Although the handicap discrimination statute does not contain a definition of handicap, the Tennessee Human Rights Act ("THRA") defines handicap as:

(I) A physical or mental impairment which substantially limits one (1) or more of such person's major life activities; or

(ii) A record of having such an impairment; or

(iii) Being regarded as having such an impairment.

Tenn.Code Ann. § 4–21–102(9); *see Cecil v. Gibson,* 820 S.W.2d 361 (Tenn.App.1991) (holding that, since the handicap discrimination statute embodies rights contained in the THRA, the THRA definition of handicap should be used). The THRA's definition of handicap includes persons perceived or "regarded" as having an impairment "which substantially limits a major life activity." A major life activity includes working. *Id.* at 365. We believe that cancer is an illness that may be perceived or regarded as limiting a major life activity in a substantial manner. The record indicates that at least one board member based his decision to demote the plaintiff on his perception that she was sick and "would have to go to the doctor." Accordingly, the evidence does not preponderate against the jury's finding that the plaintiff was demoted solely because of a handicap.

## REMEDIES AND DAMAGES

The jury awarded the plaintiff back pay in the amount of $ 65,975 for the violation of the Open Meetings Act. On the handicap discrimination claim, the plaintiff was awarded: $ 65,975 for back pay, $ 38,675 in front pay, $ 250,000 for humiliation and embarrassment, and $ 50,000 in punitive damages. The trial

---

**2.** Oral argument was heard in this case on October 8, 1997, in Columbia, Maury County, Tennessee, as part of this Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

judge entered a judgment for $ 404,650 [3] and reasonable attorney's fees pursuant to Tenn. Code Ann. § 4–21–306(a)(7). The defendants raise the following issues on appeal concerning the award of damages:

(1) Whether Mrs. Forbes failed to properly elect between inconsistent remedies;

(2) Whether the Court of Appeals provided the proper remedy under the Open Meetings Act;

(3) Whether $ 250,000 for humiliation and embarrassment was excessive;

(4) Whether the trial court erred in awarding punitive damages; and

(5) Whether the plaintiff is entitled to attorney's fees for appealing this action.

Issues 1, 3 and 4 were pretermitted by the decision of a majority of the appellate court. These issues were briefed upon appeal. In the interest of judicial economy, we will address issues 1 and 4 in lieu of remand. Issue 3 addressing remittitur, however, is remanded.

### ELECTION OF REMEDIES

A plaintiff under certain circumstances may be required to elect between remedies. The purpose behind the election of remedies doctrine is to prevent "double redress" for a single wrong. *Barger v. Webb,* 216 Tenn. 275, 391 S.W.2d 664, 666–667 (1965). The election of remedies doctrine has two general applications: (1) a plaintiff may be estopped from pursuing additional remedies once a plaintiff has made a choice to pursue a specific remedy in another forum or lawsuit, *Purcell Enterprises, Inc. v. State,* 631 S.W.2d 401, 409 (Tenn.App.1981); and (2) a plaintiff may be forced to elect between different remedies "[w]here the remedies are so inconsistent or repugnant that pursuit of one necessarily involves negation of the other." *Wimley v. Rudolph,* 931 S.W.2d 513, 515 (Tenn.1996). Neither situation is present in the case now before us.

The plaintiff in this case has not received compensation from a prior settlement or award. *See Barger v. Webb,* 391 S.W.2d at 666–667 (holding acceptance of settlement es-topped plaintiff from subsequent suit). She has not attempted to seek "double redress for a single wrong by bringing an action based upon identical claims in two different forums." *See Hutchison v. Pyburn,* 567 S.W.2d 762, 765 (Tenn.App.1977); *see also Purcell Enterprises, Inc. v. State,* 631 S.W.2d at 409 (noting purpose of election doctrine to prevent double redress for single wrong). We shall now focus on whether the remedies under the two acts are inconsistent or repugnant.

We believe that the violation of the Open Meetings Act and the discriminatory demotion, in the case now before us, created two separate and distinct causes of action under two separate remedial statutory schemes. The handicap discrimination statute embodies the remedies provided by the THRA in Tenn.Code Ann. §§ 4–21–302 to – 311. Tenn.Code Ann. § 8–50–103(b)(2). The THRA provides a broad array of remedies including: hiring, reinstatement with or without back pay, injunctive relief, payment of damages for injury, costs, reasonable attorney's fee, and "[s]uch other remedies as necessary to eliminate all the discrimination identified by the evidence ..." Tenn.Code Ann. §§ 4–21–306 & –311. The Open Meetings Act is remedial in nature and permits courts "to issue injunctions, impose penalties, and otherwise enforce the purposes of" the Act. Tenn.Code Ann. § 8–44–106(a); *Dorrier v. Dark,* 537 S.W.2d 888, 891 (Tenn.1976) (finding statute remedial in nature). Accordingly, both statutory schemes provide for similar remedies and incorporate some degree of judicial discretion in fashioning an appropriate remedy to further the purposes of each Act. We, therefore, find that the remedies provided by the Open Meetings Act and the THRA are neither inconsistent nor repugnant. *See Garrett v. Mazda Motors of Amer.,* 844 S.W.2d 178, 180 (Tenn.App.1992) (stating remedies "must be truly inconsistent").

We believe that it would be illogical to attempt to return the plaintiff to *status quo ante* in the case now before us. The jury

---

**3.** Although back pay was awarded under both the Open Meetings Act and the handicap discrimina-tion statute, the total award of $ 404,650 re-flected only one back pay award.

found that reinstatement was not feasible due to animosity associated with this litigation. The jury, therefore, awarded front pay in lieu of reinstatement under the THRA. The evidence does not preponderate against the jury's findings. The defendants' argument that the plaintiff has failed to elect between inconsistent remedies is without merit, and the jury's award of front pay under the THRA is affirmed.

### DAMAGES FOR HUMILIATION AND EMBARRASSMENT

The defendants made an oral motion for remittitur in the trial court alleging that $ 250,000 for humiliation and embarrassment was excessive and the result of "passion and caprice." The trial court denied the defendants' request for remittitur. The defendants again challenged the $ 250,000 award for humiliation and damages as excessive in the appellate court. The appellate court, however, pretermitted this issue. We remand to the appellate court the issue of whether an award of $ 250,000 for humiliation and embarrassment was excessive.

### PUNITIVE DAMAGES

The jury awarded punitive damages to the plaintiff under the THRA prior to our decision in *Carver v. Citizen Utilities Co.*, 954 S.W.2d 34 (Tenn.1997). In *Carver,* we held "that punitive damages under the THRA are available only in cases involving discriminatory housing practices and malicious harassment." *Id.* at 36. The plaintiff's award of punitive damages under the THRA was predicated on violations of the handicap discrimination law. Accordingly, the jury's award of punitive damages is vacated.

### ATTORNEY'S FEES

The plaintiff has asked this Court to award attorney's fees incurred in this appeal. The remedies provided by the THRA include "reasonable" attorney's fees. Tenn.Code Ann. § 4–21–306(a)(7) & –311. The plaintiff is the prevailing party in this suit and is entitled to relief under the THRA. The THRA does not require that the plaintiff prevail on all appellate issues before attorney's fees may be awarded. *See* Tenn.Code

Ann. § 4–21–306 (providing that affirmative action ordered under the THRA "may include ... a reasonable attorney's fee"); *see generally Church of Scientology Flag Serv. Org. v. City of Clearwater,* 2 F.3d 1509, 1513 (11th Cir.1993) (noting "well-settled" law that plaintiff is prevailing party if plaintiff has succeeded on any significant issue which achieves some of the benefit the parties sought in bringing suit). Accordingly, the plaintiff's attorneys are entitled to reasonable compensation for their time spent in pursuing this appeal. The issue is remanded to the trial court for a determination of a reasonable fee for the attorneys' services during the appellate process.

### CONCLUSION

The judgment of the trial court is affirmed as modified, and the case is remanded to the Court of Appeals. The award of punitive damages is vacated. The Court of Appeals shall review on remand the issue of whether the $ 250,000 award for humiliation and embarrassment was excessive. Upon resolution of the excessive award issue, the case is remanded to the trial court for a determination as to an award for reasonable attorney's fees associated with this appeal. Costs of this appeal shall be taxed against the defendants, Wilson County Emergency Communication District 911 Board and W.J. McCluskey, for which execution may issue if necessary.

ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.