NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1046n.06

No. 12-6171

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MICKEL G. HOBACK, | ) | **FILED**<br>Dec 20, 2013<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| CITY OF CHATTANOOGA, | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, GIBBONS, and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Mickel Hoback, a former Chattanooga police officer who suffers from Post-Traumatic Stress Disorder, sued the City of Chattanooga for discrimination in violation of the Americans with Disability Act ("ADA") and the Rehabilitation Act of 1973. The discrimination claims went to a jury, which found in favor of Hoback and awarded him $130,000 in back pay, $300,000 in front pay, and $250,000 for emotional distress. After the verdict, the City renewed its motion for judgment as a matter of law and moved in the alternative for a new trial and remittitur of the front and back pay awards. The district court denied the City's motions, concluding that the jury's verdict was supported by sufficient evidence, but granted a partial remittitur of the back pay award. The City now appeals, arguing that the jury's verdict was against the weight of the evidence and that the district court's award of front pay was in error. We affirm.

1

The Chattanooga Police Department (CPD) hired Hoback as a police officer on July 21, 2000. After starting work, Hoback enlisted in the military. He served in Iraq for over a year, returning to the CPD in late November 2005. At some point after returning from Iraq, Hoback was diagnosed with Post-Traumatic Stress Disorder (PTSD). Hoback received counseling and treatment, including psychotropic medication, from the Veterans Administration (VA).

On April 14, 2009, Hoback went to see his usual therapist, Michael Bearden. He complained about headaches, vomiting, intrusive thoughts, and sleeplessness. Bearden called the VA and made an appointment for Hoback to change his medication. Hoback met with Dr. Estella Acosta at the VA a few minutes later. Hoback testified that in this meeting Dr. Acosta asked him whether he ever though about dying, and he said that he thought about getting shot sometimes. After talking with Hoback, Dr. Acosta filled out a Certificate of Need for Involuntary Commitment, which stated that Hoback was "depressed and despondent and states that he is feeling suicidal." But Hoback was not involuntarily committed. He left the VA, went to Bearden's office, and then drove himself to the hospital. Hoback stayed overnight and was released the next day.

After hearing about the attempted involuntary committal, the CPD placed Hoback on administrative leave and asked him to take a psychological fitness for duty test. Hoback complied with the CPD's request and met with Donald L. Brookshire, Psy. D., several times to complete the test. Dr. Brookshire also reviewed Bearden's notes and Dr. Acosta's Certificate of Need for Involuntary Commitment, but he did not speak to either professional. Dr. Brookshire then wrote a report concluding as follows:

> [Hoback] is not psychologically fit to safely perform the duties as a police officer. He is currently diagnosed by the [VA] with [PTSD], Severe, as defined by the Diagnostic

and Statistical Manual of Mental Disorders, Four (DSM-IV). . . . A pattern of excessive anger, suicide and homicide thoughts and impulsive and aggressive acting out behaviors are viewed as potential risks to his successful and safe functioning as a police officer.

After receiving Dr. Brookshire's report, the CPD told Hoback to either apply for another position with the City or to request Family Medical Leave Act (FMLA) benefits.

Hoback did neither and instead asked for a second opinion. In June and July 2009, Terrell M. McDaniel, Ph.D., evaluated Hoback. Dr. McDaniel's report acknowledged that "Dr. Brookshire's impressions and conclusions were consistent with the information provided him, as well as his impressions over several interviews with Mr. Hoback." However, Dr. McDaniel ultimately concluded that Hoback was fit for duty as a police officer. Dr. McDaniel did note that the "administration may wish to choose a position that provides acceptable levels of monitoring at the beginning of [Hoback's re-engagement]." Dr. McDaniel also recommended that Hoback continue with counseling.

Police Chief Freeman Cooper fired Hoback on July 21, 2009, after Hoback had exhausted his personal leave time. Cooper based his decision on Dr. Brookshire's report, even though he had received a preliminary oral report from Dr. McDaniel. Cooper also did not talk to Hoback's VA specialist, VA psychiatrist, or medical doctor before making his decision. Cooper testified that he knew that Hoback "was not free from all mental disorders, which he's required to be to perform his job." Hoback appealed his termination to the city council, which upheld Cooper's decision.

After his termination, Hoback asked for a third evaluation. Dr. James Walker evaluated Hoback on August 18th. Dr. Walker spoke with Hoback, interviewed Bearden, discussed Hoback's work with his supervisors on the force, and reviewed Hoback's records. He ultimately diagnosed Hoback with "post-traumatic stress disorder, in remission." Walker testified that "[p]utting all that

3

information together, I could not conclude otherwise that Mr. Hoback was fit for duty to function as a police officer for the state—City of Chattanooga." Dr. Walker criticized Dr. Brookshire's report, testifying that Dr. Acosta's notes were insufficient to support her own conclusion that Hoback required involuntary committal, and that he believed Dr. Brookshire placed too much emphasis on certain records. Both Dr. McDaniel and Dr. Walker testified that they did not rely on many of Bearden's notes because they were obviously based on Hoback's embellishments or magnifications in an apparent attempt to increase Hoback's VA disability benefits.

On April 12, 2010, Hoback sued the City of Chattanooga, alleging claims under the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983. With leave of the court, Hoback amended his complaint and removed the § 1983 claim. He added a claim under the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA") and its attendant regulations. Hoback then moved for summary judgment on all of his claims. The City responded with its own motion for partial summary judgment as to the USERRA claim. The district court denied Hoback's motion, but granted the City's motion and dismissed the USERRA claim. The remaining claims proceeded to trial. At the close of evidence, the City moved for judgment as a matter of law, which the district court denied. The jury returned a verdict in favor of Hoback on September 15, 2011, awarding him $130,000 in back pay, $300,000 in front pay, and $250,000 for emotional distress for a total award of $680,000.

After the verdict, the City filed a renewed Motion for Judgment as a Matter of Law and/or Motion for New Trial. The City also asked for remittitur of excessive damage awards, arguing that the verdict was "beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." The district court denied the City's Motion for Judgment as a

4

Matter of Law and/or Motion for New Trial and the City's motion seeking remittitur on the front pay award but granted in part the City's Motion to Remit the Jury's Award of Back Pay.

**II.**

We review the district court's denial of a Rule 50 motion for judgment as a matter of law *de novo* and the district court's denial of a Rule 59 motion for a new trial under an abuse of discretion standard. *Balsley v. LFP, Inc.*, 691 F.3d 747, 757 (6th Cir. 2012); *Nolan v. Memphis City Schs.*, 589 F.3d 257, 264 (6th Cir. 2009) (citing *Morgan v. N.Y. Life Ins. Co.*, 559 F.3d 425, 434 (6th Cir. 2009)). Having carefully reviewed the record, the parties' briefs, and the applicable law, we hold that the district court did not err under either standard. Accordingly, we adopt the district court's opinion.

We note that the City raises two arguments not addressed by the district court opinion.[1] The City argues that the jury's verdict should be set aside because it is categorically inconsistent with the fact that Hoback asked for disability benefits. *See Chancey v. Fairfield S. Co.*, No. 2:11-CV-3609, 2013 WL 2635682 (N.D. Ala. June 12, 2013). Relatedly, the City contends that the verdict should be set aside because Hoback made false statements to Bearden for the purpose of increasing his disability benefits. These are essentially arguments for equitable estoppel, although the City does not characterize them as such.

We find no reason to set aside the jury's verdict on these bases. The record does not show that Hoback ever said that he was "unable to work." *See Chancey*, 2013 WL 2635682, at \*10–11.

---

[1]The City also asks us to remand for consideration of the 2013 amendments to Tenn. Code Ann. § 38-8-106, which details the City's required qualifications for the position of police officer. We decline to do so. The City has not provided any authority showing that amendments enacted almost four years after Hoback's termination are relevant to the questions in this case and much less that they are dispositive.

And the City does not point to any "obvious inconsistencies" between Hoback's application for benefits and his position taken in this litigation. *See Johnson v. Oregon*, 141 F.3d 1361, 1370 (9th Cir. 1998) ("As we have explained, the law does not require plaintiffs to choose between applying for benefits and pursuing an ADA claim. They may do both."). Moreover, Hoback's embellishments, even if taken as true, do not demonstrate an inability to do his job. The jury had a chance to hear Hoback's explanations for his disability requests and weigh his credibility accordingly, and the City has offered no reason to overturn the jury's decision.

Because a panel opinion of this court would serve no jurisprudential purpose, we adopt the reasoning of the district court and affirm on the basis of its opinion in all other respects.