# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 29, 2015 Session

## MICKEL G. HOBACK v. CITY OF CHATTANOOGA

**Appeal from the Chancery Court for Hamilton County**
**Nos. 13-0370 & 09-0965    Jeffrey M. Atherton, Chancellor**

---

**No. E2014-01678-COA-R3-CV-FILED-SEPTEMBER 28, 2015**

---

This case involves the 2009 termination of a city police officer's employment on grounds of unfitness for duty due to post-traumatic stress disorder suffered as a result of the officer's active military service while on leave from his employment. Following an administrative hearing in November 2009, the city council originally upheld the police chief's termination of the officer's employment. The officer commenced this action in state court by filing a petition for writ of certiorari with the trial court. Upon hearing, the trial court found, *inter alia*, that the city council had incorrectly applied a statute, Tennessee Code Annotated § 38-8-106, which had been overruled by an agreed consent order previously entered into between the United States and the State of Tennessee. *See United States v. Tennessee*, Civil Action No. 1:98-1357. The trial court therefore reversed the city council's decision and ordered the officer's reinstatement with back pay. The city appealed to this Court. In a 2012 decision, this Court affirmed the trial court's finding regarding the incorrect application of Tennessee Code Annotated § 38-8-106 and remanded the case, directing the trial court to instruct the city council regarding the appropriate legal standard. *See Hoback v. City of Chattanooga*, No. E2011-00484-COA-R3-CV, 2012 WL 2974762 at *6 (Tenn. Ct. App. July 20, 2012). Following remand, the city council conducted a second hearing and again voted to uphold the prior termination of the officer's employment. The officer filed a second writ of certiorari with the trial court, which the court subsequently consolidated with the first writ, resulting in this consolidated action. Upon the trial court's order, the city council submitted its written findings pursuant to its second hearing on the matter. Following a hearing, the trial court subsequently entered a final order upholding the officer's employment termination on the merits. The officer has appealed to this Court, requesting reinstatement to his former employment. Having determined that the officer has previously obtained a judgment for front pay upon his election of such remedy in a federal case arising from the same circumstances, we conclude that the officer is precluded from seeking the remedy of reinstatement. We therefore affirm the trial court's judgment on a ground different from that found by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, C.J., and D. MICHAEL SWINEY, J., joined.

W. Gerald Tidwell, Jr., W. Adam Izell, and Todd A. Davis, Chattanooga, Tennessee, for the appellant, Mickel G. Hoback.

Phillip A. Noblett and Melinda Foster, Chattanooga, Tennessee, for the appellee, the City of Chattanooga.

**OPINION**

I.  Factual and Procedural Background

The petitioner, former Chattanooga Police Department ("CPD") officer Mickel G. Hoback ("Officer Hoback"), appeals the trial court's affirmation of his 2009 employment termination by the respondent employer, the City of Chattanooga ("the City"). The instant action has been before this Court on appeal once previously. *See Hoback v. City of Chattanooga*, No. E2011-00484-COA-R3-CV, 2012 WL 2974762 (Tenn. Ct. App. July 20, 2012) ("*Hoback I*"). In *Hoback I*, this Court summarized the factual and procedural background leading to the first appeal as follows in pertinent part:

> Mickel G. Hoback began working as a police officer for the CPD in July 2000. Officer Hoback worked for the [CPD] continuously from his hire until March 19, 2002 when he went to basic training for the United States Army. Following basic training, he worked as a CPD officer until June 22, 2004 when his National Guard unit was activated and deployed to Iraq. Officer Hoback served in Iraq and was discharged from active duty on November 25, 2005. Following discharge from active duty, he resumed his employment as an officer with CPD. After Officer Hoback returned to his duties with the CPD, he was diagnosed with post-traumatic stress disorder (PTSD), which was secondary to his combat experience in Iraq. He was granted a service-connected disability by the Department of Veterans Affairs ["VA"], effective May 22, 2008.
>
> Officer Hoback received counseling and medication from the VA for PTSD. On or about April 13th or 14th, 2009, an incident occurred that led to Officer Hoback's termination from the CPD. He met with his counselor because of a possible adverse reaction to medication prescribed by a VA

2

medical doctor. The counselor suggested that Officer Hoback consult with a medical doctor regarding this issue, which he did. The medical doctor, Dr. Acosta, concluded that Officer Hoback was suicidal and she arranged that he be involuntarily committed to the VA hospital in Murfreesboro. Officer Hoback refused to be committed and he contacted his counselor, who advised him to drive himself to the VA hospital and voluntarily seek evaluation. He did so and he was voluntarily admitted for observation and he was discharged the following day.

The CPD became aware of this incident and on April 15, 2009 a letter from the Chief of Police was delivered to Officer Hoback. The letter informed him that he had been placed on administrative leave and that a "fitness for duty" psychological examination was required before he could return to duty. CPD hired psychologist Donald Brookshire to conduct the required examination and his report stated that Officer Hoback was "unfit for duty." Officer Hoback asked for another examination, which was performed by Terrell McDaniel, Ph.D. Dr. McDaniel concluded that Officer Hoback was "fit for duty[."] Dr. McDaniel's report contained the following summary of his conclusions:

> Mr. Hoback is fit for duty and should be returned to work as a patrol officer without restriction. He is not psychotic and there is no evidence of significant symptoms or signs that [sic] this time which would preclude his return to normal duties. Nevertheless, administration may wish to choose a position that provides acceptable levels of monitoring at the beginning of his re-engagement.

The Police Chief informed Officer Hoback that he was terminated from the CPD based on Dr. Brookshire's report. Officer Hoback appealed his termination to the Chattanooga City Council. A hearing was held before a panel of three members of the City Council on November 9, 2009.

The City Council was presented with two legal standards that were utilized by the Police Chief when he terminated Hoback. These standards are found in Tenn. Code Ann. § 38-8-106 and the Rules of the Tennessee Peace Officers Standards and Training Commission (POST). Two of the three members of the panel voted to confirm the CPD's termination of Officer Hoback.

*Id.* at *1-2.

Officer Hoback originated this action in state court on December 2, 2009, when he filed an application for writ of certiorari with the Hamilton County Chancery Court ("trial court"), seeking judicial review of the November 2009 decision of the Chattanooga City Council ("the City Council"). As this Court explained in *Hoback I*:

> The Trial Court issued a Memorandum Opinion and Order on February 1, 2011, reversing the City Council's decision to sustain [Officer] Hoback's termination and ordering that he be reinstated to the Chattanooga Police Department with back pay. The Chancery Court found the City Council was instructed to apply two inappropriate legal standards, thus the City Council's decision was "arbitrary[."] The Trial Court also found the City Council's findings were unsupported by substantial and material evidence in light of the entire record and that a reasonable person would draw a different conclusion from the evidence presented. The City of Chattanooga filed a Notice of Appeal on March 2, 2011.

*Id.* at *1.

This Court in *Hoback I* affirmed the trial court's finding that the City Council had been erroneously instructed to apply two incorrect legal standards. *Id.* at *6. The first of these standards was contained within Tennessee Code Annotated § 38-8-106, which set forth qualifications of police officers. In particular, the City Council had been instructed to apply the version of subsection 106(9) in effect in November 2009, which provided:

> Any person employed as a full-time police officer, and any person employed or utilized as a part-time, temporary, reserve or auxilliary police officer or as a special deputy, shall:
>
> * * *
>
> (9)    Be free of all apparent mental disorders as described in the Diagnostic and Statistical Manual of Mental Disorders, Third Edition (DSM-III) of the American Psychiatric Association. An applicant must be certified as meeting these criteria by a qualified professional in the psychiatric or psychological field.[1]

---

[1] This subsection was amended by the General Assembly, effective April 12, 2013, to provide:

(9)  Have been certified by a Tennessee licensed health care provider qualified in the psychiatric or psychological field as being free from any impairment, as set forth in the

4

As this Court concluded in *Hoback I*, this statutory section was unenforceable and no longer valid pursuant to a 2003 Consent Order and Judgment ("Consent Order") entered in an action brought by the United States Department of Justice against the State of Tennessee. *Hoback I*, 2012 WL 2974762 at *5 (citing *United States v. Tennessee*, Civil Action No. 1:98-1357). This Court further explained:

> The United States Department of Justice, filed suit against the State of Tennessee alleging that several Tennessee statutes, including Tenn. Code Ann. § 38-8-10[6], violate the Americans with Disabilities Act of 1990, "by creating a blanket exclusion of all individuals with 'apparent mental disorders' from certain types of employment." The United States alleged that the statutes at issue, including Tenn. Code Ann. § 38-8-10[6], discriminated against individuals on the basis of disability in violation of . . . [the ADA] by using qualifications standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, when the standard, test or other selection criteria, as used by the covered entity, has not been shown to be job related for the position in question and consistent with business necessity." The parties agreed to a Consent Order and Final Judgment that provided in part: A job applicant or incumbent employee may not be disqualified on the basis of a disability unless, after undertaking an individualized assessment of the individual, an employer determines that: (1) the individual cannot perform the essential functions of the job, with or without accommodations, including, with respect to incumbent, employees, reassignment, and/or (2) the individual would pose a significant risk to the health or safety of self or others that cannot be reduced or eliminated by reasonable accommodation. The State further agreed that the Tennessee Department of Personnel would present to the Governor a request to rescind the four statutes at issue, including Tenn. Code Ann. § 38-8-10[6], which the Governor would submit to the Tennessee Legislature in 2003, and thereafter as necessary. The State also agreed that the Tennessee Office of the Attorney General would inform the Tennessee Legislature that the four statutes are invalid because they conflict with

---

current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association at the time of the examination, that would, in the professional judgment of the examiner, affect the applicant's ability to perform an essential function of the job, with or without reasonable accommodation.

*See* 2013 Pub. Acts Ch. 137 § 4 (S.B. 175).

federal law. The State agreed to not enforce or implement the statutes and to promulgate new written policies consistent with the ADA to replace the current policies that implement the statutes. The State agreed to inform all political subdivisions in writing that the statutes at issue, including Tenn. Code Ann. § 38-8-10[6] should not be applied, implemented or enforced.

*Id.* at *5 (typographical error in original corrected to indicate applicable subsection, -106, rather than an unrelated subsection, -108).

The second legal standard the City Council had been instructed to apply in error was contained within the Rules of the Tennessee Peace Officers Standards and Training Commission ("POST"). As noted in *Hoback I*, the Tennessee POST Commission regulations furnished the following standard in 2009, at the time the City Council reached its initial decision, regarding the pre-employment mental state of police officers:

All full-time commissioned law enforcement officers employed by an agency required to meet minimum standards must meet pre-employment requirements and, upon completion of the required basic training, will be issued a POST certificate.

(1) Full-time Commissioned Law Enforcement Officer Pre-employment Requirements. The Commission shall issue a certificate of compliance to any person who meets the qualifications for employment and satisfactorily completes a POST certified Basic Law Enforcement Training Academy. All persons employed as a full-time law enforcement officer, after July 1, 1982, must be certified by POST and shall comply with the following preemployment requirements:

* * *

(j) Have been certified by a Tennessee Licensed Health Care Provider qualified in the psychiatric or psychological fields as being free from any disorder, as set forth in the current edition of the DSM at the time of the examination, that would, in the professional judgment of the examiner, impair the subject's ability to perform any essential function of the job.

    1. No waiver will be granted for mental disorders.

    2. A new evaluation shall be required:

a. after a six (6) month break in full-time law enforcement service, or

b. upon the request of the employing agency, for good cause.

*Hoback I*, 2012 WL 2974762 at \*4-5 (quoting Tenn. Comp. R. & Regs. 1110-02-.03).[2] This Court concluded in *Hoback I* that "[a]s the legal standards in the consent order should have been applied, there was no need for the Council to have been instructed on the POST rule." *Hoback I*, 2012 WL 2974762 at \*6.

In *Hoback I*, this Court determined that the trial court should have remanded the case to the City Council with instructions to reconsider the matter with application of the legal standard delineated in the 2003 Consent Order. *Id.* at \*6. Accordingly, this Court vacated the trial court's reinstatement of Officer Hoback to the CPD and the award of back pay. *Id.* At that point in the proceedings, this Court declared the remaining issues regarding the merits of Officer Hoback's dismissal to be pretermitted as moot. *Id.*

Meanwhile, Officer Hoback had sought relief in federal court by filing an action against the City with the United States District Court for the Eastern District of Tennessee in Chattanooga ("District Court") on April 12, 2010. *See Hoback v. City of Chattanooga*, No. 1:10-CV-74, 2012 WL 3834828 at \*2 (E.D. Tenn. Sept. 4, 2012) ("*Hoback II*"); *see also Hoback I*, 2012 WL 2974762 at \*1 (noting that at the time this Court's decision in *Hoback I* was issued in July 2012, a judgment in Officer Hoback's favor had been entered in the federal case, but the case was still pending in the District Court on post-trial motions). In the federal action, Officer Hoback alleged, *inter alia*, that his 2009 termination from the CPD violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*("ADA"); the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* ("Rehabilitation Act"); and the Uniform Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4335 *et seq.* ("USERRA"). *See Hoback II*, 2012 WL 3834828 at \*2. Upon competing motions for summary judgment, the District Court

---

[2] The version of the Tennessee POST Commission regulations 1110-02-.03(1)(j) effective as of August 18, 2015, reads in pertinent part:

(j)      Have been certified by a Tennessee Licensed Health Care Provider qualified in the psychiatric or psychological fields as being free from any <u>impairment</u>, as set forth in the current edition of the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM) <u>of the American Psychiatric Association</u> at the time of the examination, that would, in the professional judgment of the examiner, affect the person's ability to perform an essential function of the job, <u>with or without a reasonable accommodation</u>. Tenn. Comp. R. & Regs. 1110-02-.03(1) (emphasis added to highlight changes since 2009 version). In addition, the statement in the 2009 version of (1)(j)1. that "[n]o waiver will be granted for mental disorders" has been deleted from the current version. *Id.*

granted partial summary judgment in favor of the City on the USERRA claim only. *Id.* Following a jury trial, the District Court entered a judgment on September 19, 2011, in accordance with the jury's verdict finding in favor of Officer Hoback on the ADA and Rehabilitation Act claims. *See Hoback II*, 2012 WL 3834828 at *2; *Hoback I*, 2012 WL 2974762 at *1. The judgment awarded Officer Hoback a total of $680,000 in damages, including back pay in the amount of $130,000; front pay in the amount of $300,000; and compensation for emotional distress in the amount of $250,000. *See Hoback II*, 2012 WL 3834828 at *11-17 (denying the City's post-trial motions except for a partial grant to remit the jury's award of back pay to "take into account $7,780 of wages earned between termination and trial."). Upon the City's appeal to the United States Sixth Circuit Court of Appeals, the District Court's decision was eventually upheld. *Hoback v. City of Chattanooga*, 550 Fed. Appx. 257, 260 (6th Cir. Dec. 20, 2013) ("*Hoback III*").[3]

Prior to the resolution of the federal appellate process and upon remand of the state case at bar, a three-member panel of the City Council conducted a second hearing on April 8, 2013. One of the Council members who had voted during the first hearing in 2009 did not sit on the panel due to a conflict, and a Council member who had not heard the original presentation of the case was substituted. The panel reviewed the record of the 2009 Council hearing and considered oral argument by counsel for both parties, including instructions regarding application of the legal standard contained within the Consent Order. At the close of the hearing, the panel voted two-to-one in favor of upholding the termination of Officer Hoback's employment. A transcript of that hearing demonstrates that the Council member voting against upholding the termination explained his reasoning but that the two members voting in favor offered no explanation at that time.

On May 17, 2013, Officer Hoback subsequently filed with the trial court a second petition for writ of certiorari, requesting that it be consolidated with his first action. The trial court, following its issuance of the second writ, entered an agreed order on June 19,

---

[3] The record before us includes the trial court's order to supplement the record, entered on July 29, 2015, following oral argument before this Court, upon companion motions from both parties. Upon the trial court's direction, the following were supplemented to the record: "(1) Transcripts of the Federal Charge Conference and Pretrial Order[;] (2) Suggested Charges to the Jury filed by Mickel G. Hoback on July 15, 201[1;] (3) Jury Verdict Form in the United States District Court case styled: *Mickel G. Hoback v. City of Chattanooga*, Case No. 1:10-CV-74." We note also that pursuant to Tennessee Rule of Evidence 201(b)(2), this Court may take judicial notice of a fact "not subject to reasonable dispute, in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See, e.g., City of Chattanooga v. Tenn. Regulatory Auth.*, No. M2008-01733-COA-R12-CV, 2010 WL 2867128 at *3 (Tenn. Ct. App. July 21, 2010) ("We may take judicial notice of our Court's records and of records from 'other cases advancing a similar claim of relief and involving the same parties or in collateral cases presenting similar or related issues.'") (quoting *Mosely v. Brandon*, No. M2006-02398-CCA-R3-HC, 2007 WL 1774309 at *4 (Tenn. Crim. App. June 20, 2007)).

2013, consolidating the two writs of certiorari into one action. The City subsequently filed an answer and a trial brief. Following a hearing conducted on November 5, 2013, the transcript of which is not in the record on appeal, the City filed a "supplemental post-trial brief" in which it addressed the trial court's concern, apparently expressed during the hearing, regarding the silence of two City Council members as to the basis for their votes upholding Officer Hoback's termination. The City maintained that the City Council members were following accepted Council procedures. Officer Hoback concomitantly filed a memorandum in support of his writ, requesting that the trial court find the City Council's decision to be arbitrary, in part based on the lack of rationale provided by the members voting to uphold the employment termination. On January 2, 2014, the City filed a second "supplemental post-trial brief," attaching a copy of the December 2013 Sixth Circuit decision affirming the District Court judgment. The City argued that Officer Hoback should be precluded from seeking reinstatement of his employment because he had been awarded the alternative remedy of front pay by the District Court.

In a Memorandum Opinion and Order entered on January 7, 2014, the trial court remanded the case to the City Council "with instructions to state their findings of fact on the record." On February 14, 2014, the trial court entered an "Agreed Order to Deposit Funds into Registry of Court," authorizing the City to deposit $200,000 toward the $300,000 front-pay judgment entered by the District Court, "with the funds not being released to Mickel Hoback until further Order of this Court, or until this case is finally concluded." On April 11, 2014, the City filed a transcript of statements made that day at a special City Council meeting by the two Council members who had voted in favor of affirming Officer Hoback's employment termination. Each Council member at issue stated, respectively, that she had voted to affirm termination largely based on issues of untruthfulness and dishonesty surrounding Officer Hoback's claims to VA counselors and medical evaluators in which he allegedly enhanced his PTSD symptoms to secure greater disability benefits.

Officer Hoback responded by filing a supplemental brief on June 27, 2014, asserting that the trial court should confine its consideration to the question of whether he was psychologically fit to serve as a police officer when the City Council first reviewed the matter in November 2009. The City simultaneously filed a supplemental brief, asserting that the trial court should uphold the City Council's decision because credibility concerns regarding a police officer constituted a valid basis for employment termination. On July 2, 2014, Officer Hoback filed a motion to withdraw from the court's registry the $200,000 previously deposited by the City in partial fulfillment of the front-pay judgment awarded by the District Court on his behalf.

Following a hearing conducted on July 11, 2014, the trial court announced its decision to affirm the termination of Officer Hoback's employment, finding, *inter alia*,

that the City Council's second panel properly considered Officer Hoback's credibility as an appropriate basis for termination. The court also explicitly considered the factors delineated in Tennessee Code Annotated § 4-5-322(h) for judicial review of a civil service board's decision affecting a civil servant's employment. *See also* Tenn. Code Ann. § 27-9-114(b)(1) (Supp. 2015). Also on July 11, 2014, the court entered an order granting Officer Hoback's motion to withdraw the $200,000 previously deposited by the City in the court's registry and directed release of those funds to Officer Hoback. The court entered a final judgment, incorporating its comments made at the close of trial as a memorandum opinion, on August 5, 2014. Officer Hoback timely appealed to this Court.

## II. Issues Presented

Officer Hoback presents four issues for our review, which we have restated slightly as follows:

1. Whether the trial court erred by finding that the City Council's decision was not arbitrary, capricious, or characterized by an abuse of discretion.

2. Whether the trial court erred by finding that the City Council's decision was made according to lawful procedure.

3. Whether the trial court erred by finding that the City Council's decision was supported by evidence that is substantial and material in light of the entire record.

4. Whether this Court has the authority to reinstate Officer Hoback to his employment as an officer with the Chattanooga Police Department.

## III. Standard of Review[4]

Officer Hoback appeals from the trial court's judgment rendered pursuant to the statutory writ of certiorari provided by Tennessee Code Annotated §§ 27-9-101 to -114 (2000 & Supp. 2015). This writ is available following, *inter alia*, a civil service board proceeding affecting a civil servant's employment. *See* Tenn. Code Ann. § 27-9-101; *City of Memphis v. Civil Serv. Comm'n*, 238 S.W.3d 238, 242 (Tenn. Ct. App. 2007). Tennessee Code Annotated § 27-9-114(b)(1) provides that "[j]udicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review

---

[4] We note that Officer Hoback has presented the standard of review as an "issue" in his appellate brief. We find no substantive disagreement, however, between the parties as to the applicable standard of appellate review and therefore do not address this standard as a point of argument.

standards under the Uniform Administrative Procedures Act ["UAPA"], § 4-5-322." Neither party disputes that review of the City Council's affirmation of Officer Hoback's employment termination is properly governed by the standard set forth in Tennessee Code Annotated § 4-5-322(h) (2015). *See, e.g., Tidwell v. City of Memphis,* 193 S.W.3d 555, 564 (Tenn. 2006) (concluding that "under section 27-9-114," proceedings before a city's on-the-job inquiry panel, "as well as the standard of judicial review of its decisions, are governed by the UAPA."); *Burkhart v. City of Clarksville*, No. M2010-00050-COA-R3-CV, 2011 WL 1233562 at *3 (Tenn. Ct. App. Apr. 1, 2011) (citing *Tidwell* with approval and concluding that a city's hearing committee reviewing its mayor's termination of a fire department employee was acting as a civil service board pursuant to Tenn. Code Ann. § 27-9-114). We agree that Tennessee Code Annotated § 4-5-322(h) provides the proper standard of review for the City Council's action affecting a civil servant's employment.

Tennessee Code Annotated § 4-5-322(h) provides:

(h)  The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)  In violation of constitutional or statutory provisions;

(2)  In excess of the statutory authority of the agency;

(3)  Made upon unlawful procedure;

(4)  Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)  (A)  Unsupported by evidence that is both substantial and material in the light of the entire record.

(B)  In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

This Court in *Hoback I* affirmed the trial court's initial finding that the City Council in its first hearing had incorrectly relied upon two inapplicable legal standards

11

and remanded for the trial court to instruct the City Council in the correct standard. *See Hoback I*, 2012 WL 2974762 at *6 (citing the Consent Order in *United States v. Tennessee*, Civil Action No. 1:98-1357). Because the City Council had employed improper legal principles, the remaining issues raised in *Hoback I* were pretermitted as moot. *Id.* Upon determining that an agency has employed the proper legal principles, however, this Court will proceed to consider the agency's findings. As this Court has explained:

> Upon confirming that an agency has employed the proper legal principles in the case under review, this Court must then consider the disputed factual findings and address whether the agency had a reasonably sound basis for making those findings. *See McEwen v. Tenn. Dept. of Safety,* 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Like the trial court, this Court applies the substantial and material evidence standard in reviewing the agency's findings of fact. *Bobbitt v. Shell,* 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003). Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion" and to furnish a reasonably sound basis for the decision under consideration. *City of Memphis v. Civil Serv. Comm'n,* 216 S.W.3d 311, 316 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n,* 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)); *Dickson v. City of Memphis Civil Serv. Comm'n,* 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005); *Pruitt v. City of Memphis,* 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005); *Bobbitt,* 115 S.W.3d at 510.
>
> As directed by the statute, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. *Pruitt,* 2005 WL 2043542, at *7. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result. *Martin v. Sizemore,* 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Rather, we may reject an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence. *Id.*
>
> Likewise, Tennessee Code Annotated Section 4-5-322(h)(4) permits a reviewing court to modify or reverse an administrative decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly

unwarranted exercise of discretion."  Tenn. Code Ann. § 4-5-322(h)(4) (2005).  A decision unsupported by substantial and material evidence is arbitrary and capricious.  *City of Memphis v. Civil Serv. Comm'n,* 216 S.W.3d 311, 315 (Tenn. 2007).  Yet, a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support.  *Id.* at 316.  A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion."  *Id.* (quoting *Jackson Mobilphone,* 876 S.W.2d at 110-11).

*City of Memphis*, 238 S.W.3d at 243.  Although our review of an agency's factual findings is confined to the provisions of Tennessee Code Annotated § 4-5-322, we review matters of law *de novo* with no presumption of correctness.  *See* Tenn. R. App. P. 13(d); *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009).

## IV.  Remedy of Reinstatement Precluded by Prior Judgment

Determining this issue to be dispositive, we first address whether Officer Hoback's requested remedy of reinstatement is precluded by the judgment awarding front pay previously entered on his behalf by the District Court and affirmed by the Sixth Circuit.  On appeal, Officer Hoback has requested that this Court reverse the trial court's affirmation of his employment termination and reinstate him as a police officer with the CPD.  The City contends that Officer Hoback would receive a double recovery were he to be reinstated because he has already received a front-pay award in the amount of $300,000 as part of the federal court judgment.  Upon careful review, we conclude that, pursuant to the election of remedies doctrine, Officer Hoback is precluded from seeking the remedy of reinstatement by his previous election of the front-pay remedy and the ultimate front-pay judgment entered on his behalf by the District Court and paid to him by the City.

In order for the election of remedies doctrine to apply, "a fact situation must contain:  (a) factors making more than one remedial form available; (b) the forms must in their theory, be inconsistent or repugnant; (c) the choice must be a wilful one, consciously made; and (d) the remedy chosen must be pursued so as to clearly indicate an irrevocable election."  *Barger v. Webb*, 391 S.W.2d 664, 666 (Tenn. 1965); *see also Petty v. Darin*, 675 S.W.2d 714, 716 (Tenn. Ct. App. 1984).  As our Supreme Court has explained:

The election of remedies doctrine has two general applications:  (1) a plaintiff may be estopped from pursuing additional remedies once a

plaintiff has made a choice to pursue a specific remedy in another forum or lawsuit, *Purcell Enterprises, Inc. v. State*, 631 S.W.2d 401, 409 (Tenn. App. 1981); and (2) a plaintiff may be forced to elect between different remedies "[w]here the remedies are so inconsistent or repugnant that pursuit of one necessarily involves negation of the other." *Wimley v. Rudolph*, 931 S.W.2d 513, 515 (Tenn. 1996).

*Forbes v. Wilson Cnty. Emergency Dist. 911 Bd.*, 966 S.W.2d 417, 421 (Tenn. 1998).

Tennessee courts have recognized that an employee who is found to be wrongfully discharged "can be made whole through an award of back pay and either reinstatement or, in certain circumstances, front pay." *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 432 (Tenn. Ct. App. 1992) (citing *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 416-22 (1982)). Reinstatement is the preferred remedy, but courts have recognized that it is not always feasible. *Sasser*, 839 S.W.2d at 433. "Reinstatement is an equitable remedy . . . and front pay is an equitable substitute for reinstatement." *Id.* at 435 (internal citations omitted). Regarding the purpose of front pay, this Court explained in *Sasser*:

> In cases where reinstatement is not feasible, front pay is intended to assist in making a discharged employee whole by complementing a back pay award. While back pay is intended to provide an award for injuries occurring prior to trial, front pay is an award for future injury that may occur after trial. It is, simply, an award of prospective damages for the loss of future earnings.

*Id.* at 433 (internal citations omitted). Front pay "is not intended to be punitive . . . or to provide an employee a windfall." *Id.*

Although Officer Hoback's action in federal court arose from the same set of circumstances as the instant action, his claims were brought pursuant to federal law, specifically the ADA, the Rehabilitation Act, and the USERRA. *See Hoback II*, 2012 WL 3834828 at \*2. The jury verdict and ultimate judgment entered by the District Court in favor of Officer Hoback were upon the finding that the City had violated the ADA and the Rehabilitation Act by terminating his employment. *See id.*; *see also Hoback I*, 2012 WL 2974762 at \*2. Officer Hoback commenced the instant action under a separate legal theory, requesting judicial review of the City Council's decision as allegedly arbitrary, capricious, characterized by an abuse of discretion, made according to unlawful procedure, or unsupported by substantial and material evidence pursuant to the standard delineated in Tennessee Code Annotated § 4-5-322(h).

14

To clarify, because Officer Hoback's state claim is separate from that raised in federal court, the doctrine of *res judicata*, or claim preclusion, does not apply to this action. *See Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (explaining that a successful defense predicated on *res judicata* or claim preclusion requires, *inter alia*, "that the same claim or cause of action was asserted in both suits"); *see e.g.*, *Forbes*, 966 S.W.2d at 421 (concluding that when the plaintiff's claims for violation of the Open Meetings Act and discriminatory demotion, both arising from a demotion in her employment position, "created two separate and distinct causes of action under two separate remedial statutory schemes," she was entitled to pursue both claims). However, pursuant to the election of remedies doctrine, if Officer Hoback elected and received the remedy of front pay as a substitute for reinstatement, he is precluded from seeking the remedy of reinstatement in this action. *See id.* at 421 ("The purpose behind the election of remedies doctrine is to prevent 'double redress' for a single wrong.") (quoting *Barger*, 391 S.W.2d at 666-67); *see also Flynn v. Shoney's Inc.*, 850 S.W.2d 458, 461 (Tenn. Ct. App. 1992) (holding that because "front pay is a substitute for reinstatement," a plaintiff electing one "would not be entitled to both.").

Officer Hoback has asserted on appeal that the City is arguing for the first time to this Court that the reinstatement claim is precluded by the prior award of front pay. Upon our thorough review of the record, we disagree with this assertion. The record indicates that the City first raised the issue in its second supplemental post-trial brief, filed on January 2, 2014. The City attached to this brief a copy of the December 20, 2013 Sixth Circuit decision affirming the District Court's September 2011 judgment. *See Hoback III*, 550 Fed. Appx. at 260. Although the City did not specifically employ the phrase, "election of remedies," in its January 2014 brief, the City did argue that Officer Hoback's writ of certiorari should be denied for seeking reinstatement when he had been awarded front pay in federal court. Thereafter, during the July 11, 2014 hearing before the trial court, counsel for each party, respectively, discussed the Sixth Circuit's affirmation of the District Court's judgment during oral argument. The City argued, *inter alia*, that the award of front pay precluded the remedy of reinstatement. Specifically, the following exchange occurred during oral argument before the trial court:

| Trial Court: | They're [Officer Hoback's counsel] not asking for back pay, just so we're clear. It's already been presented by counsel. All they're looking for at this point is reinstatement. |
|---|---|
| The City's Counsel: | Yes, sir. But they said that as to the back pay amount, Your Honor. The front pay is another matter because front pay is an issue of what a jury has paid to an individual for the remainder |

of their career in connection with a claim of discrimination. And as such, that would be future pay, not just back pay to this point in time. So I would assert that the Plaintiff in this matter has been fully compensated under the Americans with Disabilities Act for his claims to the time of the hearing and also into the future by that, which I think is inconsistent with a request at this point in time for reinstatement and additional pay from the City of Chattanooga as a police officer in that position.

We determine that the issue of Officer Hoback's prior election of remedies between two inconsistent choices, reinstatement or front pay, is properly before this Court and was also presented to the trial court prior to that court's final judgment in this matter.

We next address whether Officer Hoback consciously and willfully chose to pursue the remedy of front pay as an irrevocable election in his federal case. *See Barger*, 391 S.W.2d at 666. Upon the parties' respective motions and the trial court's order, the appellate record has been supplemented with the following documents from the District Court action: suggested charges to the jury filed by Officer Hoback on July 15, 2011; the transcript of the federal jury charge conference, conducted on September 14, 2011; the District Court's final pretrial order, entered September 16, 2011; and the completed jury verdict form, entered September 15, 2011. In his suggested charges to the jury, Officer Hoback sought "damages for back pay, front pay, and lost benefits, including but not limited to retirement and pension benefits, and that he be awarded compensatory damages for humiliation and embarrassment, invasion of privacy, emotional pain and suffering, mental anguish, loss of enjoyment of life, and inconvenience." (Emphasis added.) Officer Hoback included the following suggested instruction regarding front pay:

### *Front Pay*

Damages may also include loss of future earnings, also called front pay. These damages would be measured by the compensation in the form of salary which MICKEL G. HOBACK could reasonably be expected to receive, if he had not been the victim of illegal discrimination, for as long as he would reasonably be expected to be employed by the CITY OF CHATTANOOGA. In deciding whether MICKEL G. HOBACK is entitled to front pay and in calculating an amount of front pay, you should take into consideration the nature and degree of severity of his disability. You may consider whether he has a permanent or long-term disability, and whether

16

he has proven that he is suffering from PTSD. You may also consider the effect of any other disabilities that he may have. You should also bear in mind and follow the previous instructions regarding his duty to mitigate damages by making reasonable efforts to secure and accept other employment. In calculating any award of front pay or loss of future earnings, it can reasonably be expected that his future earnings would have increased at approximately the pace of interest rates or of inflation. An economically accurate measure of his lost future income would include his expected salary over a number of years including expected pay raises with each year['s] sum discounted to present cash value through the use of the appropriate discount rate. However, you may also obtain a reasonable approximation of this figure by multiplying the amount of his present expected salary by a set number of years, neither including future pay raises nor applying a discount rate.

(Footnotes omitted.)

During the subsequent jury charge conference, the following exchange occurred:

| District Court: | Would you like to take up the front pay issue, then? |
|---|---|
| The City's Counsel: | The concern I believe that the city has at this point in time is based upon the proof in this case as to whether there will be potential liability from the statements that Officer Hoback has made to [his VA counselor]. As long as those are part of a medical record and are not releasable, that would be nice. The problem at this point is, they are now, under oath, part of this court record in this case. |
| District Court: | If there is a lawsuit, though, how could you not release them? |
| The City's Counsel: | Well, we, I believe, would have to release that information if there were a lawsuit and someone was requesting that information discovery-wise. |

17

| District Court: | So it's not uncommon for officers to be involved in lawsuits alleging excessive force, even if they're only tangentially involved. |
|---|---|
| The City's Counsel: | No, sir. And that information could come in in virtually any case. So at this point I don't believe it would be appropriate to allow him to come back. So maybe it would be appropriate to consider front pay. |
| District Court: | Very well. <u>The Court will give the instruction on front pay, then.</u> <u>Is there any objection to that?</u> |
| Officer Hoback's Counsel:[5] | <u>No, Your Honor.</u> |

(Emphasis added.)

Officer Hoback argues to this Court that he was "forced" by the City's assertions to the District Court to agree to the jury charge of front pay rather than reinstatement. To the contrary, upon our thorough review of the record, we determine that Officer Hoback, through his counsel in the federal action, willfully and consciously elected the remedy of front pay. He submitted the suggested jury instruction of front pay to the federal court and did not submit a suggested jury instruction for reinstatement. During the jury charge conference, he did not object to the District Court's decision to provide an instruction on front pay. Moreover, we note that Officer Hoback did not raise an issue regarding the front-pay jury charge on appeal to the Sixth Circuit. *See Hoback III*, 550 Fed. Appx. 257; *cf. Hoback II*, 2012 WL 3834828 at \*14 (denying the City's post-trial motions involving allegedly excessive damage awards and noting that "[t]he City does not refute the Court's determination [that] reinstatement, the preferred remedy in termination cases, was inappropriate in this case nor does it refute the Court's decision to submit the issue of front pay to the jury.").

Officer Hoback does not dispute the City's claim that it has paid to him the entire $300,000 designated by the District Court's judgment as front-pay damages. We note also that the trial court entered an order on July 11, 2014, upon Officer Hoback's earlier motion, directing that the $200,000 previously deposited by the City in the court's

---

[5] In the federal action, Officer Hoback was represented by counsel different from the counsel now representing him on appeal in this action.

18

registry as partial payment of the front-pay judgment be released to Officer Hoback. Officer Hoback asserts on appeal that "[i]f reinstated, any front pay he received in the district court judgment by the jury that he has not now earned as back pay since the setting of that amount, he is willing to return to the City of Chattanooga." Assuming, *arguendo*, that such a refund were possible, if ordered by this Court, it would defeat the purpose of the District Court's award of front pay and grant double redress to Officer Hoback for the interim between that award and this decision. We conclude that the remedy of reinstatement is precluded in this action by Officer Hoback's election of front pay in his federal case and by the previous judgment granting front pay entered by the District Court, affirmed on appeal by the Sixth Circuit, and paid to Officer Hoback by the City.

## V. Remaining Issues

In this action, Officer Hoback seeks reversal of the City Council's affirmation, pursuant to Tennessee Code Annotated § 4-5-322(h), of his employment termination with the requested remedy of reinstatement to his position as an officer with the CPD. Having determined that the remedy of reinstatement is precluded by the District Court's prior judgment granting to Officer Hoback a front-pay award, we further determine the remaining issues raised by Officer Hoback to be pretermitted as moot. We therefore affirm the trial court's judgment dismissing Officer Hoback's reinstatement claim on this different, preclusive ground. *See Cont'l Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986) ("Suffice it to say that this Court will affirm a decree correct in result, but rendered upon different, incomplete, or erroneous grounds."). In reaching this decision, we emphasize that our analysis pertains only to Officer Hoback's election of the remedy of front pay previously awarded by the District Court and affirmed by the Sixth Circuit. We make no determination regarding the merits of the City Council's decision to affirm Officer Hoback's employment termination.

## VI. Conclusion

For the reasons stated above, we affirm the judgment of the trial court dismissing Officer Hoback's reinstatement claim. The costs on appeal are assessed against the appellant, Mickel G. Hoback. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

19