IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 15, 2006 Session

## CITY OF MEMPHIS, a Municipal Corporation v. THE CIVIL SERVICE COMMISSION OF THE CITY OF MEMPHIS ET AL.

**Appeal by Permission from the Court of Appeals, Western Section**
**Chancery Court for Shelby County**
**No. CH-04-0432-2     Arnold Goldin, Chancellor**

_____

**No. W2004-00091-SC-R11-CV - Filed on March 2, 2007**

_____

After an internal administrative hearing, the appellee, the City of Memphis ("the City"), discharged Police Officer Jack Vincent ("Vincent"), the appellant. The Civil Service Commission ("the Commission") heard Vincent's appeal, ruled that the termination was not reasonable, and ordered reinstatement with full back pay and benefits. Subsequently, the City filed a petition for writ of certiorari challenging the decision of the Commission. The Chancery Court reviewed the record and affirmed the Commission. On direct appeal, however, the Court of Appeals reversed, holding that Vincent was lawfully terminated. We granted an application for permission to appeal to ascertain whether substantial or material evidence supported the decisions of the Commission and the Chancery Court. Because it is our view that there was no substantial or material evidence supporting the reinstatement of Vincent, we affirm the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

GARY R. WADE, J., delivered the opinion of the Court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and CORNELIA A. CLARK, JJ., and D. MICHAEL SWINEY, SP.J., joined.

Thomas E. Hansom and Leigh H. Thomas, Memphis, Tennessee, for the appellant, Jack Vincent.

Sara L. Hall, City Attorney, and Gerald T. Thornton and Carmalita Carletos-Drayton, Assistant City Attorneys, for the appellee, City of Memphis.

**OPINION**

**I. Factual and Procedural Background**

On October 2, 2002, forty-year-old Memphis Police Officer Jack Vincent made contact through an Internet chat room with seventeen-year-old S.B.[1] Using the screen name "Unklecreepy," the name of a comic book character from the 1960s and 1970s, Vincent falsely represented to S.B. that he was thirty-one years old. He then arranged to communicate with her by direct e-mail and the two exchanged messages over a period of two to three days. They also communicated by both telephone and cell phone. Later, they exchanged their real names by way of the Internet. Vincent was aware that S.B. was seventeen years of age.

During the course of their communications, S.B. disclosed that her step-father regularly molested her and asked Vincent for permission to move into his residence. In return, S.B. offered to perform household chores and sexual favors for Vincent. S.B., who had a web camera attached to her computer, removed her clothing during one of their communications and masturbated while Vincent watched the video feed on his monitor.

Only three days after they had begun their correspondence, Vincent arranged to meet S.B. at her home in Fayette County at 1:00 a.m., a time when S.B.'s step-father was to be at work. S.B.'s two half-sisters, ages six and thirteen, were the only other occupants of the residence at the time. In the meantime, members of the Memphis Crimes Against Children Task Force, made up of officers from the FBI, the Memphis Police Department, and the Fayette County Sheriff's Department, had received a report of the content of the Internet communications between Vincent and the minor. The task force set up surveillance at both Vincent's and S.B.'s residences. After Vincent had driven some forty miles from his home in Shelby County into Fayette County, the authorities interceded. The officers returned Vincent to his residence, took possession of his computer, found evidence of his communications with S.B., and discovered other nude images.

When questioned, Vincent admitted the nature of his communications with S.B., explaining, "She would call me up and ask if I wanted to see a show . . . [and] I said, yeah, . . . and I turned on the [I]nternet and she did . . . strip, yes." Vincent insisted that he never asked S.B. to strip or to masturbate in his presence. He claimed that in his next conversation with her, he warned, "You shouldn't do that anymore." Vincent stated that S.B. "seemed like she was suicidal . . . so I went ahead with the . . . decision to . . . pick her up and try to take her to get some help." His alleged admonishment, however, was not preserved on his computer. Vincent explained that he did not notify the Memphis Police because S.B. "was afraid of official involvement[,] . . . afraid of going to a foster home, [and] . . . afraid of police in general . . . [who might] force her into a possibly more dire situation." Vincent claimed that it was his intention to take S.B. to a hospital or a law enforcement agency. Vincent also acknowledged that he did not contact either the Oakland Police Department, the Fayette County Sheriff's Department, or the Department of Children's Services. He conceded that his conduct "was not the way to handle" the situation.

---

[1] In accordance with the practice of the intermediate appellate courts, this Court will refer to the minor victim of sexual abuse by her initials.

Until the intervention by the task force, Vincent had not reported S.B.'s complaints about her step-father to anyone. Sometime after Vincent was confronted by the task force, S.B.'s step-father was charged and later convicted of crimes related to her complaints.

Deputy Director Ray Schwill of the Memphis Police Department conducted an internal investigation to determine whether to charge Vincent with a violation of department regulations. According to the Deputy Director, Vincent freely acknowledged the web camera incident and admitted accepting S.B.'s offer to live with him in exchange for cleaning and laundry services. Vincent also acknowledged that S.B. had offered sexual favors but claimed that his response was equivocal – "they would take that one day at a time." When asked why he did not report S.B.'s claims of sexual abuse, Vincent, who contended that he was just trying to "help somebody," explained that he had never faced a situation like that. At the conclusion of the hearing, Deputy Director Schwill recommended termination. The hearing summary provided, in part, as follows:

> Officer Vincent decided not to report the ongoing sexual abuse of [S.B.] although he had ample time and opportunity to do so. He spoke with [S.B.] a number of times on the [I]nternet. He had an inappropriate relationship to allow her to come live with him. He would have let her come live with him. He attempted to remove her from her residence without the knowledge of her step-father or any law enforcement agency. And he would have done so if not stopped by local authorities and the task force . . . .

Deputy Director Schwill also concluded that Vincent had failed to report to his supervisor that he was under investigation until seven days after the incident, as required by Departmental Rule 125, and that he had failed to report the crimes of the step-father against S.B.

On January 24, 2003, the City discharged the defendant based upon his failure to report the incident to his supervisor and his violation of Departmental Rule 104 of the Memphis Police Department Policy and Procedure, which governed personal conduct:

> The conduct of each member, both on and off duty, is expected to be such that it will not reflect adversely on other members, the Department, the City of Memphis, or the law enforcement profession. This regulation applies to both the professional and private conduct of all members. It prohibits any and all conduct which is contrary to the letter and spirit of departmental policy and procedure which would reflect adversely upon the Department or its members. It includes not only all unlawful acts by members but also acts which, although not unlawful in themselves would violate the Law Enforcement Code of Ethics, and would degrade or bring disrespect on the member or the Department.

Vincent appealed his termination to the Commission. At the hearing before the Commission, Deputy Director Schwill's findings were presented on behalf of the City.

Special Agent Joseph N. Rinehart of the Federal Bureau of Investigation, who served on the Memphis Crimes Against Children Task Force, confirmed that he had initiated the inquiry when a friend of S.B. made a report of the e-mail communications with "a Memphis police officer." Eventually, Agent Rinehart was able to identify Vincent and establish surveillance. At the time Vincent was stopped, S.B. was standing at her front porch with several "luggage type" bags containing her belongings.

Special Agent Stephen Leis[2] of the FBI, a member of the task force, testified that he questioned Vincent, who readily admitted watching on the web camera as S.B. stripped and masturbated. According to the officer, there were pictures of S.B. at Vincent's residence. After Agent Leis received Vincent's consent to search his computer, he made a mirror image of its content.

Memphis Police Department Sergeant Brady Valentine, who was also a part of the task force, described Vincent as cooperative when stopped in Fayette County. Sergeant Valentine confirmed that after the completion of the investigation, Vincent was not charged with a crime. He did, however, state that a copy of the report was forwarded to Major Matt McCan of the Memphis Police Department for any internal investigation.

Donald Lewis Sr., a thirty-year veteran of the Memphis Police Department, testified before the Commission on behalf of Vincent. The former deputy director of the department, Officer Lewis expressed that Vincent had a reputation for truth and honesty. Although he had retired before Vincent was employed as a police officer, Officer Lewis related that Vincent had a good relationship with the public and had performed capably in his previous job as a security guard.

Officer Hope Elizabeth Bebout, a Crime Response Officer for fourteen years, described Vincent as "a good guy, an honest man." Memphis Police Officers Steven Sloan, Michael Chapman, and Barbara Robinson, none of whom had any firsthand knowledge of the facts leading to Vincent's discharge, also testified as character witnesses.

On February 11, 2004, the Commission, in a split decision, ruled that the termination was not reasonable under the circumstances. The Chairman ruled that Departmental Rule 125, requiring officers to immediately submit a written report when under investigation by any agency other than the Memphis Police Department, was not abridged because of the uncertainty surrounding whether Vincent was "under investigation." The Commission also observed that because Officer Valentine was part of the task force and a member of the police department, Vincent's duty to report was abrogated.

As to Departmental Rule 104, regarding the personal conduct of the defendant, the majority of the Commission concluded that Vincent "never encouraged, requested, or agreed to anything." While acknowledging Vincent's admission that he observed S.B. in the nude by web camera and considered her offer for sexual favors, the Commission implicitly accredited Vincent's statement that

---

[2] The surname of Agent Leis is spelled Leiss, Leis, and Lies in the recorded testimony.

he was "attempting to remove the minor from her situation, not to further exploit her" and had not otherwise agreed to anything improper. The dissenting commissioner simply described Vincent's conduct as unbecoming of a police officer.

After reviewing the record, the Chancery Court upheld the decision of the Commission, observing that it was "not permitted to replace its judgment for that of the . . . Commission." The court described its only duty as limited – to determine whether the record contained "substantial and material evidence to support the Commission's decision." The Chancellor was of the opinion that the Commission could have determined the issue in favor of "either side."

On direct appeal, the Court of Appeals reversed, holding that there was no material evidence to support the determination by the Commission that there was no reasonable basis for termination. In the assessment of the Court of Appeals, there was no evidence to contradict Vincent's violation of Departmental Rule 104 governing personal conduct. The Court of Appeals concluded that the rule regulated the conduct of police officers, not their intentions, and that Vincent's conduct "unquestionably reflects adversely on the members of the Memphis Police Department, the City of Memphis, and the law enforcement profession." That Officer Vincent knew that S.B. was a minor and yet purposefully watched her perform sexually explicit acts was a critical factor in their ruling.

## II. Analysis

Both the Chancery Court and the Court of Appeals considered the appeal under the rules applicable to the common law writ of certiorari. Prior to 1989, the exclusive means of appeal by a municipal employee from a decision by a civil service board was by common law writ of certiorari. Tidwell v. City of Memphis, 193 S.W.3d 555, 559 (Tenn. 2006); see also Huddleston v. City of Murfreesboro, 635 S.W.2d 694, 695-96 (Tenn. 1982). The legislature, however, amended section 27-9-114 of the Tennessee Code to provide the current means for judicial review of the decisions of civil service commissions:

> (a)(1) Contested case hearings by civil service boards of a . . . municipality which affect the employment status of a civil service employee shall be conducted in conformity with contested case procedures under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, part 3.
> . . . .
> (b)(1) Judicial review of decisions by civil service boards of a    . . . municipality which affects the employment status of a . . . city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act, § 4-5-322.
> (2) Petitions for judicial review of decisions by a city . . . civil service board affecting the employment status of a civil service employee shall be filed in the chancery court of the county wherein the local civil service board is located.

Tenn. Code Ann. § 27-9-114 (Supp. 2003). Thus, in accordance with the terms of the statute, this Court will review the decision of the Commission under the Uniform Administrative Procedures Act rather than the common law writ of certiorari.

The standard for review on appeal in administrative proceedings is governed by Tennessee Code Annotated section 4-5-322(h), which authorizes courts to review or remand agency decisions. Under this provision, the courts have a variety of statutory grounds for reversal or modification when "the administrative findings, inferences, conclusions or decisions" are as follows:

> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence that is both substantial and material in the light of the entire record. . . .

Tenn. Code Ann. § 4-5-322(h) (Supp. 2003). A review by the Chancery Court of the determinations by the Civil Service Commission is confined to a review of the record of the proceedings. Tenn. Code Ann. § 4-5-322(g) (Supp. 2003). There is no provision for a jury. Id.

Of the five statutory grounds for reversal, only the last two relate to the sufficiency of the evidence. In the consideration of the application of (5), courts shall review "whatever in the record fairly detracts from its weight, but . . . shall not substitute its judgment for that of the agency . . . on questions of fact." Tenn. Code Ann. § 4-5-322(h) (Supp. 2003); see also Gluck v. Civil Serv. Comm'n, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999). The scope of review on direct appeal is the same as in the trial court. See Watts v. Civil Serv. Bd. for Columbia, 606 S.W.2d 274, 277 (Tenn. 1980). In Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n, 876 S.W.2d 106 (Tenn. Ct. App. 1993), the Court of Appeals confirmed the limited nature of review under the Uniform Administrative Procedures Act. That court observed that only those agency decisions not supported by substantial and material evidence qualified as arbitrary and capricious but determined that even those decisions with adequate evidentiary support might still be arbitrary and capricious if caused by a clear error in judgment. Id. at 110. Our Court of Appeals warned against a mechanical application of the standard of review under subsections (4) or (5):

> In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error in judgment. An arbitrary [or capricious] decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.
>
> Likewise, a reviewing court should not apply Tenn. Code Ann. § 4-25-322(h)(5)'s "substantial and material evidence" test mechanically. Instead, the court

should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." . . . The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed.

Id. at 110-111 (citations omitted).

By virtue of these guidelines, our review is confined to whether the decision of the Commission qualifies as either arbitrary or capricious or, in the alternative, has insufficient support in the evidence. While the Chancellor, in this instance, appropriately recognized the principle that an administrative decision should not be disturbed when there is substantial or material evidence to support one of two results, it is our conclusion that even under a limited scope of review, these facts warrant a result contrary to that of the Commission. See Martin v. Sizemore, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001) (stating that rejection of an administrative agency's factual findings is appropriate "if a reasonable person would necessarily draw a different conclusion from the record").

The essential facts are indeed undisputed. To his credit, Vincent was cooperative with the investigating officers and candidly acknowledged that he had been untruthful about his own age and that he was fully aware that S.B. was a minor. Nevertheless, he intentionally observed her sexually explicit acts via the Internet by web camera and proceeded to develop a personal rather than a professional agenda. By his own account, Vincent left open the alternative of a sexual relationship with a minor. His acknowledgment that as a police officer, he had "mishandled" the situation, by failing to report S.B.'s complaints to the authorities in Fayette County or otherwise seeking assistance from any other agency, qualifies as a concession that his personal misconduct violated Departmental Rule 104.

A relationship of this nature between a veteran officer, invested with the public trust and sworn to protect and serve, and an underage female, a victim of sexual abuse by a step-parent, reflects adversely on the City and its police department. Finally, even if Vincent's intentions were honorable, his conduct was not. There is simply no substantial and material evidence which contradicts his violation of a departmental rule. As indicated by our Court of Appeals, a different result is not only a reasonable alternative but is a conclusion necessary to the administration of justice.

## Conclusion

Because it is our view that the Commission erred by reinstating Vincent and because the Chancellor failed to correct that decision, we affirm the judgment of the Court of Appeals. The costs of the appeal are taxed to the appellant, Jack Vincent, and his surety, for which execution shall issue if necessary.

_____
GARY R. WADE, JUSTICE