IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 3, 2017

## CHARLES E. CUNNINGHAM v. TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE, INSURANCE DIVISION

**Appeal from the Chancery Court for Davidson County**
**No. 15-1072-IV     Russell T. Perkins, Chancellor**

_____

**No. M2016-02231-COA-R3-CV**

_____

This appeal involves the decision of the Commissioner of the Tennessee Department of Commerce and Insurance (the "Commissioner") to impose a civil fine and revoke the license of insurance agent Charles E. Cunningham ("Cunningham"), after concluding that Cunningham committed six (6) violations of applicable statutes in connection with his insurance practice. Cunningham filed a petition for review in the Chancery Court for Davidson County challenging the sufficiency of the evidence relied on by the Commissioner. The trial court found that the record supported the Commissioner's decision and choice of penalty. Cunningham appealed to this Court. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

William E. Griffith, Nashville, Tennessee, for the appellant, Charles Edward Cunningham.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Timothy R. Simonds, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Commerce & Insurance.

# OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

Cunningham was a licensed insurance agent in Tennessee from 1982 until his license was revoked as a result of these proceedings. Cunningham operated his business under the name Cunningham Insurance, LLC. At all times relevant to these proceedings, Charles Michael Outland ("Outland") and Rodney Moore ("Moore") were co-owners of ABC Services ("ABC"), a janitorial business.

On December 22, 2009, Moore gave Cunningham a check for $4,717, payable to Travelers Indemnity Company ("Travelers") ("Transaction 1"). Moore tendered the check as partial payment for ABC's workers' compensation and general liability insurance policies. Instead of remitting ABC's check to Travelers for purchase of the requested policies, Cunningham deposited the check directly into his business operating account. Cunningham never submitted an application for an insurance policy to Travelers, and Travelers never issued a policy in connection with Transaction 1.

On December 29, 2009, Moore issued a second check for $10,744. The check was tendered as payment-in-full for ABC's workers' compensation and general liability policies with effective dates from December 7, 2009 through December 7, 2010 ("Transaction 2"). Although the check was made payable to Travelers, Cunningham once again deposited the check directly into his business operating account.

After Transaction 2, Cunningham submitted an application for ABC's policies to Travelers. Travelers issued the requested policies to ABC with effective coverage dates of December 7, 2009 through December 7, 2010. Cunningham, however, did not pay Travelers the policy premiums. After repeated notifications for payment were mailed to Cunningham, Travelers canceled ABC's policies in February 2010 due to non-payment of the premiums. Travelers eventually referred the case to RMS Collection Service ("RMS").

On April 12, 2010, ABC contacted Cunningham to request its certificates of insurance. Cunningham did not inform ABC that the policies had been canceled in February due to non-payment of premiums. Instead, Cunningham provided ABC a fraudulent declarations page for the canceled insurance policies, and he led ABC to believe its coverage was still effective.

In July 2010, RMS contacted Outland and notified him that ABC's policies with Travelers had been canceled on February 7, 2010 for non-payment of premiums. Outland immediately contacted Travelers about the status of the policies, and Travelers informed Outland that it had issued the policies but never received the payments. Travelers also informed Outland that Travelers had not notified ABC directly concerning the

cancellations because Cunningham had directed Travelers to send correspondence concerning the policies directly to his mailing address. Additionally, Travelers advised Outland that the total amount due for the annual premiums was $6,619—not $10,744.

After speaking with Travelers, Outland went directly to Cunningham's office to confront him. Cunningham insisted the policies were effective and provided Outland with a declarations page effective March 5, 2011 to March 5, 2012. When Outland questioned Cunningham about the incorrect dates, Cunningham explained that the dates reflected a clerical error, ABC's policies were still effective, and Travelers must be mistaken because it swept the payment from his account. Outland then confronted Cunningham with the fact that Travelers had promised to refund him for the misappropriated funds and to reinstate ABC's policies. Even then, Cunningham continued to blame Travelers for the problem.

On July 30, 2010, Outland filed a complaint with the Tennessee Department of Commerce and Insurance, Insurance Division ("Division"), alleging that Cunningham collected premiums from ABC, failed to purchase the promised policies, and continued to misrepresent their existence for several months. Also, in July 2010, Marguerite Fredette, a senior investigator with Travelers' internal investigations division, opened an investigation of Cunningham's practices after being contacted by Outland.

Travelers reimbursed Outland and reinstated ABC's polices. It then notified Cunningham to immediately reimburse Travelers' for the premiums Cunningham misappropriated from ABC. Travelers informed Cunningham repeatedly that non-payment and a failure to cooperate with Travelers' audit personnel would result in an immediate termination of Cunningham's appointment as an agent for Travelers. On August 9, 2010, Cunningham sent Travelers a check for $9,581; however, the check was returned for insufficient funds. After receiving notification, Cunningham emailed Travelers representing that he had mailed a cashier's check on August 30, 2010. However, Travelers never received the payment, and Cunningham further failed to provide documents that Travelers requested in connection with its audit of Cunningham. On September 29, 2010, Travelers terminated its relationship with Cunningham and filed a complaint with the Division.

The Division initiated a formal investigation of Cunningham on November 8, 2010. On June 28, 2013, the Division filed a petition against Cunningham with the Secretary of State, alleging that he violated Tennessee Code Annotated Sections 56-6-112(a)(4), (5), (7), (8), 56-8-104(1)(A), and 56-6-116. The Division requested that Cunningham's license be revoked and the maximum civil penalty of two hundred and fifty thousand dollars ($250,000) be imposed as authorized by Tennessee Code Annotated Section 56-2-305.

On June 12, 2014, a hearing was held on the Division's petition before an administrative law judge (the "ALJ"). On December 18, 2014, the ALJ issued an order in which she concluded that the Division had established, by a preponderance of the evidence, that Cunningham: (1) misappropriated insurance premium payments (Count I [Tenn. Code Ann. § 56-6-112(a)(4)]); (2) intentionally misrepresented the terms of an actual or proposed insurance contract (Count II [Tenn. Code Ann. § 56-6-112(a)(5)]); (3) engaged in an unfair trade practice (Count III [Tenn. Code Ann. § 56-6-112(a)(7)]); (4) engaged in dishonest and fraudulent practices (Count IV [Tenn. Code Ann. § 56-6-112(a)(8)]); and (5) violated his fiduciary duty to ABC (Count V [Tenn. Code Ann. § 56-6-116]). The ALJ found Cunningham guilty of Counts I-V. In total, the ALJ concluded Cunningham committed six (6) statutory violations.

By order of July 9, 2015, the Commissioner adopted the ALJ's factual findings and legal conclusions. The Commissioner also affirmed the ALJ's revocation of Cunningham's license and imposition of an $18,000 civil penalty. On September 4, 2015, Cunningham filed a petition for judicial review in the Chancery Court of Davidson County. Tenn. Code Ann. § 4-5-322. On September 26, 2016, the trial court issued a final order affirming the Commissioner in all respects. Cunningham appeals. We affirm.

## II. ISSUES PRESENTED

Cunningham presents the following two (2) issues for our review, which we restate as follows:

A. Whether the Commissioner erred in her determination that Appellant committed six (6) statutory violations?

B. Whether the punishment imposed by the Commissioner was proper?

## III. STANDARD OF REVIEW

On appeal, Cunningham seeks to overturn the final decision of the Commissioner in a contested case proceeding under the Uniform Administrative Procedures Act ("UAPA"). *See, e.g.*, *Parker v. Shelby Cty. Gov't Civ. Serv. Merit Bd.*, 392 S.W.3d 603, 611 (Tenn. Ct. App. 2013). Thus, this Court's review of the Commissioner's decision is governed by the narrow standard prescribed by Tennessee Code Annotated Section 4-5-322(h), which provides:

The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence which is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

*Gluck v. Civ. Serv. Comm'n*, 15 S.W.3d 486, 489–90 (Tenn. Ct. App. 2000) (quoting Tenn. Code Ann. §4-5-322(h)). Tennessee Code Annotated Section 4-5-322 only permits a reviewing court to reverse or modify the Commissioner's decision if one or more of the five enumerated grounds for reversal is present. *See Parker v. Shelby Cty. Gov't Civ. Serv. Merit Bd.*, 392 S.W.3d 603, 612 (Tenn. Ct. App. 2012) (citing *Metro. Gov't of Nashville v. Tenn. Dep't of Educ.*, 771 S.W.2d 427)). The scope of review in this Court is the same as in the trial court. *Gluck*, 15 S.W.3d at 490.

On appeal, Cunningham attacks the sufficiency of the evidence relied on by the ALJ based on his belief that the Division did not establish, by a preponderance of the evidence, that he intentionally misrepresented the terms of an insurance policy, misappropriated funds, engaged in an unfair trade practice, engaged in dishonest or fraudulent practices, or violated his fiduciary duty to ABC. The Tennessee Supreme Court has explained that "only the last two [statutory grounds for reversal, Tennessee Code Annotated subsections 4-5-322(h)(4)–(5)], relate to the sufficiency of evidence." *City of Memphis v. Civ. Serv. Comm'n of City of Memphis*, 216 S.W.3d 311, 316 (Tenn. 2007). Accordingly, this Court must determine whether the ALJ's findings, as adopted by the Commissioner, were arbitrary and capricious or unsupported by substantial and material evidence. *See Davis v. Shelby Cty. Sherriff's Dep't*, 278 S.W.3d 256, 262 (Tenn. 2009); *Mosley v. Tenn. Dep't. of Commerce and Ins.*, 167 S.W.3d 308, 316 (2004); *see also Pace v. Garbage Disposal Dist. of Wash. Cty.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965) ("Judicial review of the action of administrative bodies is confined to an examination of the evidence to determine whether there is material evidence to support conclusions that are neither arbitrary nor unlawful."). Although "substantial and material evidence" is not clearly statutorily defined, it is generally understood that "it requires less than a preponderance of the evidence but more than a scintilla or glimmer." *Mosley*, 167 S.W.3d at 316 (citing *Wayne Cty. v. Tenn. Solid Waste Disposal and Control Bd.*, 756 S.W.2d 274, 280 (1988)); *see also Papachristou v. Univ. of Tenn.*, 29 S.W.3d 487, 490

(Tenn. Ct. App. 2000) (defining the term "substantial and material evidence" as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration").

This Court explained the standard of review of Tennessee Code Annotated Section 4-5-322(h) in detail in *Jackson Mobilphone Co. v. Tennessee Public Service Commission*, 876 S.W.2d 106 (Tenn. Ct. App. 1993). The applicable standards are narrower than the standard of review normally applicable on appeal to this Court. *Id*. In *Jackson Mobilphone Co.,* this Court warned against mechanical application of the standard of review under subsections (4) or (5):

> In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error in judgment. An arbitrary [or capricious] decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

> Likewise, a reviewing court should not apply Tenn. Code Ann. § 4-25-322(h)(5)' s "substantial and material evidence" test mechanically. Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed.

*Id.* at 110–11 (citations omitted). "By virtue of these guidelines, our review is confined to whether the decision of the [Commissioner] qualifies as either arbitrary or capricious or, in the alternative, has insufficient support in the evidence." *City of Memphis*, 216 S.W.3d at 316–17.

## IV. ANALYSIS

### A. SUBSTANTIAL AND MATERIAL EVIDENCE SUPPORTS THE COMMISSIONER'S CONCLUSIONS

As discussed above, the ALJ held that Cunningham committed: (1) two violations of Tennessee Code Annotated Section 56-6-112(a)(4) by misappropriating insurance premium payments when he took two checks from ABC and never remitted payment to Travelers; (2) one violation of Tennessee Code Annotated Section 56-6-112(5) by intentionally misrepresenting the validity of the policies through a fraudulent declarations page; (3) one violation of Section 56-6-112(7) by engaging in an unfair trade practice or fraud; (4) one violation of Section 56-6-112(8) when he led ABC to believe it had

insurance after the policies had been canceled; and (5) one violation of Section 56-8-104(1)(A) by violating his fiduciary duty to ABC. The Court will address each of the violations, found by the Commissioner, against the record, in turn.

Tennessee Code Annotated Section 56-6-112 provides, in relevant part, that:

(a) The commissioner may place on probation, suspend, revoke, or refuse to issue or renew a license issued under this part or may levy a civil penalty in accordance with or take any combination of those actions, for any one (1) of the following causes . . .

(4) Improperly withholding, misappropriating or converting any moneys or properties received in the course of doing the insurance business;

(5) Intentionally misrepresenting the terms of an actual or proposed insurance contract or application for insurance. . . .

(7) Having admitted or been found to have committed any insurance unfair practice or fraud. . . .

(8) Using fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of business in this state or elsewhere . . .

Tennessee Code Annotated Section 56-6-116 provides:

Any money that an insurance producer receives for soliciting, negotiating or selling insurance shall be held in a fiduciary capacity, and shall not be misappropriated, converted or improperly withheld. Any violation of this section shall be considered grounds for the denial, suspension, or revocation of the insurance producer's license and shall subject the insurance producer to the sanctions and penalties as set forth under Tenn. Code Ann. § 56-6-112.

The Commissioner adopted the following factual findings, as found by the ALJ:

1. The Respondent is a citizen and resident of the State of Tennessee, whose address of record is 3708 Nolensville Road, Suite A, Nashville, Tennessee 37211.

2. At all times relevant to the events herein, Respondent was licensed by the TID to sell insurance in this state as an insurance producer, having obtained resident insurance producer license number 0640097 on December 30, 1982. The Respondent's license is currently in active status, and scheduled to expire June 30, 2016.

3. On July 30, 2010, TID received a complaint from alleged victims that Mr. Cunningham had misappropriated insurance premiums and failed to either purchase or remit payments from the insurance policies for which Cunningham had been contracted. Pursuant to this complaint, TID initiated a formal investigation, number 10-049, on November 8, 2010.

4. The victims were Charles Michael Outland and Rodney Moore, former co-owners of ABC Service ("ABC"), a janitorial service that had conducted insurance business with Mr. Cunningham for several years prior to the incident at issue in this proceeding.

5. On December 22, 2009, Mr. Moore issued a check to Mr. Cunningham made payable to Travelers Insurance ("Travelers") in the amount of $4,617 for a worker's compensation and general liability policy ("Transaction 1"). The check was directly deposited into Cunningham Insurance LLC's operating account. Mr. Cunningham never remitted the money to Travelers. Mr. Cunningham never submitted an application for a policy with Travelers in relation to the check issued for $4,617 by Moore. A policy was never requested, nor issued by, Travelers.

6. On December 29, 2009, Mr. Moore issued a check to Mr. Cunningham made payable to Travelers in the amount of $10,774 for general liability and workmen's compensation policies for ABC ("Transaction 2"). These policies were issued by Travelers, but were subsequently canceled on February 10, 2010 for nonpayment of premiums. The check Mr. Moore had written for the policies was deposited directly into Mr. Cunningham's operating account. Travelers never received the payment, which led to the policies being canceled and the unpaid balance being referred to collection.

7. Mr. Outland was unaware of the policies being canceled until RMS Collections Services ("RMS") contacted him in July, 2010. RMS notified Mr. Outland that the policies he had purchased from Travelers through Mr. Cunningham were canceled February 10, 2010, for nonpayment of premiums. It was later discovered that Mr. Cunningham provided Travelers with his office address; therefore, Mr. Outland never received any correspondence from Travelers.

8. Mr. Outland immediately contacted Travelers about the status of the Transaction 2 policies he purchased. Travelers informed Mr. Outland that it had received the paperwork requesting purchase of the policies from Mr. Cunningham's Insurance Agency, but never received a premium payment. Travelers confirmed that nonpayment was the reason the policies had been turned over to RMS. Travelers also explained to Mr. Outland that the policies' premiums totaled $6,619. Travelers could not explain why Mr. Cunningham had collected $10,744 for the policies.

9. After speaking with Travelers, Mr. Outland went to speak with Mr. Cunningham at his office to question him about the policies related to Transaction 2. Mr. Cunningham presented Mr. Outland with a declarations page, allegedly proving the legitimacy of the policies; however, the declarations page listed effective dates that were in the future (March 3, 2011—March 5, 2012). Mr. Cunningham told Mr. Outland that the dates were a clerical error. Mr. Outland expressed his wish to cancel the policies, and Mr. Cunningham told him that he would refund Mr. Outland the money within two weeks. ABC or Mr. Outland never received the refund.

10. In September 2010, Travelers initiated an internal investigation regarding Transaction 2. It concluded that Mr. Cunningham collected premiums from ABC in excess of what was due, and never remitted the payments to Travelers. ABC provided Travelers with proof of payment, in response, Travelers reinstated the canceled policies for the amount of $6,619. Travelers also reimbursed ABC $4,125 which was the amount ABC had been charged by Mr. Cunningham in excess of the premiums due.

11. Travelers demanded that Mr. Cunningham refund the company for the premiums it reimbursed to ABC related to Transaction 2. On August 9, 2010, Mr. Cunningham issued a check to Travelers for $9,581 to cover the price of the policies and the refund for excess charges. On August 18, 2010, the check was returned to Travelers stamped non-sufficient funds. Travelers consequently terminated Mr. Cunningham's appointment with Travelers on September 29, 2010, for failure to cooperate with the company's internal investigation audit, and for failure to reimburse Travelers.

13. [sic] At the end of the case-in-chief, TID offered proof of additional wrongdoings committed by Mr. Cunningham to be considered only when calculating penalties, if any. The following factual findings relate to that proof:

> A. Mr. Kelvin Arauz is the owner of Drywall Nashville Company. Mr. Arauz purchased an insurance policy through Mr. Cunningham

in November, 2013, for his company. He paid Mr. Cunningham the initial premium and continued to make payments on the policy to Mr. Cunningham until May, 2014.

B. Mr. Cunningham gave Mr. Arauz an Accord Certificate of Liability of Insurance, which stated that Drywall Nashville Company had a commercial general liability insurance policy, policy number JAWAW4532, with Mesa Underwriters Specialty Insurance Company, and employers' liability insurance policy through Plaza Insurance Company, policy number NC-TN-000736 BIN.

C. Martha Arauz, Mr. Arauz's wife, witnessed Mr. Arauz pay Mr. Cunningham. In addition, she had paid Mr. Cunningham for the insurance, on numerous occasions.

D. Ms. Heidi Drury is a subcontractor who was employed by Drywall Nashville Company. The Certificate of Insurance Mr. Arauz gave her did not list Drywall Systems Corporation as the certificate holder or additional insured.

E. Ms. Drury attempted to contact Mr. Cunningham several times, but he never answered. Ms. Drury left her information for him in voicemails, but the calls were not returned.

F. Drywall Nashville Company applied for a payment on May 30, 2014, and after that payment, Ms. Drury again attempted to contact Mr. Cunningham, but the attempts again failed.

G. Ms. Drury went to the State's worker's compensation verification website, and the site did not list Drywall Nashville Company as having a worker's compensation policy. Ms. Drury examined the Certificate of Insurance that Mr. Cunningham had provided to Mr. Arauz, and she noticed that policy numbers were not typical. She contacted both insurers, and they both informed her that the policy numbers were not consistent with their policy numbers, the numbers were not consistent with their quote numbers, and that Mr. Cunningham's insurance agency was not listed as one of their agents.

H. On June 2, 2014, Mr. Cunningham called Ms. Drury around 10:00 a.m. to tell her that he had straightened out the problem with Drywall Nashville Company's insurance, and that he would send

her an updated Certificate of Insurance that same day. As of the time of the affidavit taken that same day at 3:00 p.m., Mr. Drury had not heard back from Mr. Cunningham.

Turning to the record, we conclude there is substantial and material evidence to support the Commissioner's findings as to Counts I-V. Outland testified that Cunningham provided him with certificates of insurance for the two policies that had already been canceled by Travelers. Outland also testified that, after being contacted by RMS in July 2010, he confronted Cunningham, who continued to mislead Outland about the policies. Outland told Cunningham that Travelers was going to reimburse ABC for the payments made to Cunningham. Even then, Cunningham continued to blame the situation on Travelers, specifically stating that Travelers had taken the money out of his account months ago. Kimberly Biggs, a senior fraud investigator for Travelers, testified that Cunningham reported to Travelers that he had never received any notification of non-payment of the policies until Outland contacted him in July 2010. However, Travelers' business records indicate that it sent multiple notifications to Cunningham's business address. After his check to reimburse Travelers was returned for insufficient funds, Cunningham told Travelers a cashier's check was in the mail in August 2010. Travelers never received the promised payment.

From our review of the record, we conclude that the Commissioner's decision is supported by substantial and material evidence. Accordingly, her decision is not arbitrary and capricious.

Before turning to address the punishment set by the Commissioner, we first address Cunningham's argument that the Division failed to meet its burden to show that his violations were willful. Tennessee Code Annotated Section 56-2-305 provides that civil penalties shall not exceed $1,000 for each violation, limited to an aggregate penalty of $100,000; however, if the individual knowingly violates a statute, penalties can be assessed up to $25,000 for each violation, not to exceed $250,000. The ALJ concluded that $3,000 in civil penalties per violation was appropriate given Cunningham's violations.

The record shows Cunningham overcharged ABC by approximately four thousand dollars for the policies. He deposited approximately fourteen thousand dollars into his bank account and never remitted any of the money to Travelers. When Travelers sought reimbursement for the money it paid to reimburse ABC, Cunningham sent Travelers a check that was returned with insufficient funds, and, when confronted, told Travelers that a replacement cashier's check was in the mail. Travelers never received the check.

Travelers' employees testified that Travelers sent Cunningham multiple notifications that ABC's policies would be canceled due to non-payment of premiums. Although Travelers ultimately canceled the policies, Cunningham continued to represent,

to Outland, that the policies were in place and even went so far as to give Outland certificates of insurance for the canceled policies. When Outland confronted Cunningham, after being contacted by RMS, Cunningham blamed Travelers and attempted to convince Outland that nothing was wrong by showing him a fraudulent declarations page.

In view of the foregoing facts, Cunningham's arguments are disingenuous. Any insurance agent would notice their account reflected a surplus balance of approximately fourteen thousand dollars. The scope of Cunningham's violations goes well beyond his claim that the mistakes were merely clerical errors. There is sufficient evidence to support the Commissioner's determination that Cunningham's violations were willful.

### B.     REVOCATION OF LICENSE AND CIVIL PENALTY

The standard of review for sanctions imposed by the Commissioner requires this Court to affirm unless the sanction is unwarranted in law or without justification in fact. *See Mosley*, 167 S.W.3d at 319 An administrative agency acting within the bounds of lawful authority is afforded significant deference. *Id.* "The relations of remedy to policy is peculiarly a matter of administrative competence." *Id.* (*quoting Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185 (1973)). Therefore, the Tennessee Supreme Court has held that "[h]aving found grounds to affirm the procedures employed, facts found, and conclusions reached, we will not interfere with the sanctions imposed [by the administrative agency so long as warranted in law]." *See McClellan v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 693 (Tenn. 1996).

Specifically, Tennessee Code Annotated Section 56-2-305 states:

> (a) If, after providing notice consistent with the process established by § 4-5-320(c) and providing the opportunity for a contested case hearing held in accordance with the Uniform Administrative and Procedures Act . . . the commissioner finds that any insurer, person, or entitled required to be licensed, permitted or authorized by the division of insurance has violated any statute, rule or order, the commissioner may, at the commissioner's discretion, order:

> (2) Payment of a monetary penalty of not more than one thousand dollars ($1,000) **for each violation**, but not to exceed an aggregate penalty of one hundred thousand dollars ($100,000), unless the insurer, person, or entity knowingly violates a statute, rule or order, in which case the penalty shall not be more than twenty-five thousand dollars ($25,000) for each violation, not to exceed an aggregate penalty of two hundred fifty thousand dollars ($250,000). This subdivision. . . . and

(3) the suspension or revocation of the insurer's, person's, or entity's license.

(emphasis added)

Under the statute, each of Cunningham's six (6) statutory violations could result in revocation of his insurance producer's license and/or the levy of a civil penalty. Tenn. Code Ann. §§ 56-2-305; 56-6-112(a). The Commissioner determined that Cunningham's pattern of behavior warranted imposition of an $18,000 penalty and revocation of his license. The statute clearly allows the Commissioner to impose such a penalty when there have been numerous willful violations of the statute, as is the situation in this case. Accordingly, we conclude the penalty imposed on Cunningham by the Commissioner was not arbitrary and capricious.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellant Charles Cunningham and his surety for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE