IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 9, 2020 Session

## GARRETT RAMOS v. THE ELECTRIC EMPLOYEES' CIVIL SERVICE AND PENSION BOARD OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Chancery Court for Davidson County**
**No. 18-1378-IV      Russell T. Perkins, Chancellor**

_____

**No. M2020-00324-COA-R3-CV**
_____

Appellant, a Lineman with the Nashville Electric Service ("NES"), filed a grievance with Appellee Electric Employees' Civil Service and Pension Board (the "Board") after the NES revoked Appellant's unauthorized raise. The Administrative Law Judge ("ALJ") held that the facts supported the NES' decision to withdraw the raise, and the Board adopted that finding. Appellant appealed to the Chancery Court of Davidson County ("trial court"). The trial court held that there was substantial and material evidence to support the Board's decision and that the decision was neither arbitrary nor capricious. Discerning no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Michelle Owens, Nashville, Tennessee, for the appellant, Garrett Ramos.

Robert W. Horton, Nashville, Tennessee, for the appellee, Electric Employees' Civil Service and Pension Board.

## OPINION

## I. Background

Appellant Garrett Ramos began working for NES as a Lineman on November 21, 2016. Following a live skills assessment, the compensation committee, in accordance with NES procedure, set Mr. Ramos' pay at Step 8 of Pay Grade 11. In the first month of work, Mr. Ramos discussed his past experience with Charlie Hall, who is now the president of the The Nashville Electric Service Employees Association (NESEA)/Service Employees International Union, Local 205 (SEIU). During that conversation, Mr. Hall suggested that Mr. Ramos was being paid at a rate that was too low. Messrs. Ramos and Hall took the issue of Mr. Ramos' compensation to Jeff Eck, the compensation and benefit manager at NES. On December 26, 2016, without following NES procedure and obtaining the required approval to effectuate a pay increase, Mr. Eck unilaterally increased Mr. Ramos' pay to Step 10 of Pay Grade 11. However, on August 4, 2017, NES notified Mr. Ramos that NES made an error in increasing his pay and that his pay would be returned the appropriate rate.

On August 18, 2017, Mr. Ramos filed a grievance with the Board. Mr. Ramos asserted that his pay had been reduced for no legitimate reason and without proper explanation. The Board referred the grievance to an ALJ for a hearing on May 14, 2018. On August 9, 2018, the ALJ entered its Report and Recommendation, wherein it concluded that NES neither violated the Civil Service Rules nor harmed Mr. Ramos in reducing his pay and restoring his prior wage. The ALJ recommended that Mr. Ramos' grievance be dismissed. The Board upheld the ALJ's recommendation and dismissed the grievance. On December 20, 2018, Mr. Ramos petitioned the trial court for review of the Board's decision. By order of January 29, 2020, the trial court affirmed the Board's decision. Mr. Ramos appeals.

## II. Issues

Mr. Ramos raises the following issues for review as stated in his brief:

1. Whether the Chancery Court properly ruled that the Board's determination is supported by evidence that is both substantial and material?

2. Whether the Chancery Court properly ruled that the Board's determination was not arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion?

3. Whether the Chancery Court properly ruled that the Board's determination was not in excess of the statutory authority?

### III. Standard of Review

Tennessee Code Annotated section 27-9-114 provides that "[j]udicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act ["UAPA"], § 4-5-322." Tenn. Code Ann. § 27-9-114 (a)(1); *Pittman v. City of Memphis*, 360 S.W.3d 382, 386 (Tenn. Ct. App. 2011); *City of Memphis v. Civil Serv. Comm'n of Memphis*, 238 S.W.3d 238, 242 (Tenn. Ct. App. 2007). The UAPA provides, in pertinent part:

> (a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. . . .
>
> ***
>
> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
>
> (i) No agency decision pursuant to a hearing in a contested case shall be

reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

Tenn. Code Ann. § 4-5-322. In *City of Memphis*, this Court explained that

[u]pon confirming that an agency has employed the proper legal principles in the case under review, this Court must then consider the disputed factual findings and address whether the agency had a reasonably sound basis for making those findings. *See McEwen v. Tenn. Dept. of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Like the trial court, this Court applies the substantial and material evidence standard in reviewing the agency's findings of fact. *Bobbitt v. Shell*, 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003). Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion" and to furnish a reasonably sound basis for the decision under consideration. *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)); *Dickson v. City of Memphis Civil Serv. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005); *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005); *Bobbitt*, 115 S.W.3d at 510.

As directed by the statute, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. *Pruitt*, 2005 WL 2043542, at *7. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result. *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Rather, we may reject an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence. *Id.*

Likewise, Tennessee Code Annotated [s]ection 4-5-322(h)(4) permits a reviewing court to modify or reverse an administrative decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h)(4). A decision unsupported by substantial and material evidence is arbitrary and capricious. *City of Memphis*, 216 S.W.3d at 315. Yet, a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support. *Id.* at 316. A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the

case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* (quoting *Jackson Mobilphone*, 876 S.W.2d at 110-11).

*City of Memphis*, 238 S.W.3d at 243.

## IV. Analysis

Article 42, Section 18 of the Metropolitan Charter of Nashville and Davidson County delegates authority over the salary plan for NES employees to the Electrical Power Board:

> [S]aid board shall have the authority, subject to the applicable civil service provisions, to determine the number of positions and employ persons to fill vacancies in said position, and **to fix the salaries or compensations within the limits of the pay plan**. . . .

(Emphasis added). The Civil Service Rules ("CSR") dictate the policies that management uses to establish salary and compensation plans as contemplated by the Charter. As is relevant to the instant case, CSR 4.001 provides that, "Employees will be paid within the range of pay assigned to their respective job classifications unless prescribed otherwise . . . ." In addition, CSR 4.011 states that employees shall be "paid at least the minimum but not more than the maximum of the Pay Grade assigned to his/her job classification . . . ." Furthermore, CSR 4.012 provides that "[t]he starting rate for a new employee will be based on the employee's qualifications including previous work experience and competitive practices." Pursuant to these CSR provisions, the NES has adopted a pay plan for nonsupervisory employees such as Mr. Ramos.

Concerning the compensation for NES Linemen, the record indicates that there are two categories of Linemen: fully related Linemen and Linemen Apprentices (or Trainees). The distinction between the two types of Linemen is that fully related Linemen have a certificate from the Department of Labor, and Linemen Apprentices do not. NES's nonsupervisory pay plans consist of 16 Pay Grades with 15 pay Steps per Pay Grade. Pursuant to the "Nonsupervisory Classification Index and Pay Plan," all fully related Linemen are paid within Pay Grade 11. Lineman Apprentices are paid within Pay Grade 9. Pursuant to CSR 4.001, Linemen may be paid at any Step within Pay Grade 11; however, Linemen usually begin at Step 8, 9, or 10. To comply with CSR 4.012, *supra*, NES requires all Linemen applicants to complete a live skills assessment where they are asked to complete certain tasks associated with the position in front of the Operations Evaluation Committee ("Committee"). Thereafter, the Committee and the Compensation and Benefits Section determine the pay Step at which the Lineman should start his or her employment. There is no precise formula for this decision.

Pursuant to the foregoing procedure, Mr. Ramos underwent a live skills assessment and interview. Based on Mr. Ramos' resume, skills evaluation, and the discussion between the Compensation and Benefits Section and the Operations Center Manager, Brandon Whitlock, and Mr. Ramos' supervisor, Mr. Ramos' was offered a fully related Lineman position with compensation starting at Step 8 of Pay Grade 11. Mr. Eck did not participate in this initial decision concerning Mr. Ramos' salary.

The ALJ found that, "based upon the proof presented . . . that NES followed its standard procedure of assessing Mr. Ramos' skill and experience in setting that rate [of pay], and was consistent with the requirements of the CSR." We agree. As discussed above, the Board has the authority to set the compensation of NES employees. According to the CSR, employees are paid within a range set for their particular job, and that range is set based on a judgment call after an applicant completes a live skills assessment by the Committee. There is no dispute that NES followed its normal procedure with respect to setting Mr. Ramos' initial pay at a rate within the range that is usually paid to beginner Linemen, i.e., Step 8 of Pay Grade 11. Based on the record, there is substantial and material evidence to support the ALJ's conclusion that Mr. Ramos' hiring and the setting of his initial salary were done in compliance with NES procedure.

At the trial level and on appeal, Mr. Ramos asserts that he was not hired as a fully related Lineman. Rather, he maintains that he was hired as a Lineman Apprentice. The record does not support Mr. Ramos' contention. As discussed above, it is clear that Mr. Ramos was hired at an initial Pay Grade of 11, Step 8. As discussed above, Pay Grade 11 applies to fully related Lineman, whereas Pay Grade 9 is applicable to Lineman Apprentice positions. There is no indication in the record that Mr. Ramos was ever paid at an apprentice level. In short, NES adhered to its standard procedures in the determination of Mr. Ramos' compensation. Mr. Ramos took part in a live skills assessment and an interview. As a result of his skills assessment and interview, it was recommended that Mr. Ramos be offered the Lineman position under the usual initial salary of Step 8 of Pay Grade 11.

Concerning changes in nonsupervisory NES employees' salaries, there are three ways to receive pay raises: (1) a general pay increase approved by the Board; (2) a Step pay increase based on tenure; or (3) by virtue of a promotion. Nonsupervisory employees receive Step pay increases every six months; a nonsupervisory employee, who seeks a raise outside the normal progression through the Steps, must make a request to his or her manager. The manager then may discuss the request with the head of the employee's department. If the head of the department and the manager agree that the employee should receive a pay increase, the Compensation and Benefits Department must approve the request. Finally, if the Compensation and Benefits Department approves the request, an Employee Information and Data Change Form must be completed and signed by: (1) the employee's manager; (2) the head of the employee's department; (3) the head of

- 6 -

Compensation and Benefits; and (4) the CEO of NES. Absent any step in the foregoing procedure, a nonsupervisory employee's compensation cannot be modified.

As discussed above, in Mr. Ramos' case, Mr. Eck unilaterally decided to give Mr. Ramos a two-step raise (from Step 8 to Step 10); this constituted a 5% pay raise. It is undisputed that Mr. Eck did not seek approval from Mr. Ramos' manager, Mr. Whitlock, from the department head, Frank Travis, or from the NES CEO, Decosta Jenkins. In addition, there is no indication that a Data Change Form was completed, much less signed by the required parties. In short, there is no dispute that Mr. Eck failed to following the required procedure to change Mr. Ramos' salary.

Based on the foregoing facts, the ALJ concluded that Mr. Eck acted outside the scope of his authority when he unilaterally implemented a pay raise for Mr. Ramos without obtaining the necessary approvals of such raise in accordance with NES policy. Citing NES' internal procedure, discussed *supra*, the trial court agreed that Mr. Eck unilaterally provided Mr. Ramos a pay increase in violation of NES protocol for raises outside the normal raise progression. From the record, we agree. There is simply no evidence that Mr. Eck complied with any portion of the NES procedure for raising nonsupervisory employees' salaries when he gave Mr. Ramos a two-step increase. Because Mr. Eck had no authority to authorize or implement Mr. Ramos' raise, the NES was not bound by his decision absent ratification of same. *See, e.g.*, **Bells Banking Co. v. Jackson Ctr., Inc.**, 938 S.W.2d 421, 425 (Tenn. Ct. App. 1996), *perm. app. denied* (Tenn. Jan. 6, 1997).

Concerning any ratification on the part of NES, Mr. Ramos cites the fact that his raise was not rescinded for seven months and argues that this demonstrates that there was no error in granting the raise. Respectfully, the fact that it took some time for the NES to undo what Mr. Eck did does not cure the fact that Mr. Eck had no authority to approve Mr. Ramos' raise in the first place. Nonetheless, Mr. Ramos contends that Mr. Whitlock did not oppose the raise until July 2017 (when the raise was effective in January 2017). The record, however, does not support Mr. Ramos' contention. The record shows that Mr. Whitlock received notice of Mr. Ramos' pay change by way of an automated system that alerts managers of employee pay changes. Very shortly thereafter, Mr. Whitlock spoke with Mr. Eck; specifically, Mr. Whitlock informed Mr. Eck that Mr. Ramos' salary was correctly set at Step 8 of Pay Grade 11. Although the internal procedure for reversing the unauthorized pay raise took some time and discussion, at no point did any NES employee ratify Mr. Eck's unilateral decision. Rather, the NES reversed Mr. Ramos' step increase and reinstated his salary at Step 9 of Pay Grade 11, which was the step Mr. Ramos was due at the time of the reversal. NES did not, however, attempt to disgorge Mr. Ramos of the extra salary he had been paid in the time before the reversal. Mr. Ramos received the benefit of the higher salary for approximately seven months, and, in this regard, was not harmed by NES' reversal of the unauthorized raise. Furthermore, Mr. Ramos had no due process rights associated with the unauthorized pay increase

because he had no legitimate claim of entitlement to it. *See* ***Rowe v. Bd. of Educ. of the City of Chattanooga***, 938 S.W.2d 351, 354 (Tenn. 1996) (citing ***Bd. of Regents of State Colls. v. Roth***, 408 U.S. 564, 577 (1972)); ***Miller v. City of Murfreesboro***, 122 S.W.3d 766, 774-75 (Tenn. Ct. App. 2003); ***Green v. City of Memphis***, No. W2003-013340-COA-R3CV, 2004 WL 1592815, at *4 (Tenn. Ct. App. Apr. 24, 2004). From the record, the trial court correctly concluded that the NES Board did not act outside its authority. As such, the Board's decision was neither arbitrary nor capricious because there was a rational basis and substantial and material evidence to support the decision. *See* ***Mobilcomm of Tenn., Inc. v. Tennessee Pub. Serv. Comm'n***, 876 S.W.2d 101, 104 (Tenn. Ct. App. 1993), *perm. app. denied* (Tenn. March 28, 1994).

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Garrett Ramos, for all of which execution may issue if necessary.

      s/ Kenny Armstrong    
KENNY ARMSTRONG, JUDGE
